[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 388 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 389 
This is a petitory action involving 34.68 acres of land, fronting the Mississippi River in the Parish of Plaquemines and located within the boundaries of the Bohemia Spillway, a project undertaken and completed by the Board of Levee Commissioners of the Orleans Levee District by the direction and under the authority of Act 99 of 1924.
The basis of the title of the plaintiffs, Robert L. Emery, Robert L. Emery, Jr., Miss Alice Miller and the El Paso National Bank, testamentary executor of James M. Baker, is a certificate of redemption obtained from the Register of the State Land Office on November 9, 1938, which was issued to the plaintiffs after the payment of $32.47, the amount of taxes and interest for which the property was adjudicated to the State on September 23, 1922. The plaintiffs claim that this certificate places the property back in the same condition as it was prior to the tax adjudication.
The defendant, the Orleans Levee Board, now in possession of the property, relies mainly on its contention that the State of Louisiana in authorizing and instructing it to erect a spillway has dedicated the property *Page 391 
to public use and, therefore, the property was not subject to redemption.
Upon trial of the issues, the lower court gave judgment in favor of the plaintiffs, recognizing them to be the owners of the property subject to the right of the defendant to acquire the property within a period of six months by expropriation. The judgment provided that should the defendant fail to exercise this privilege within that period of time, the title to the property would vest in the plaintiffs subject to the servitude of flowage. The right of the plaintiffs to sue for the value of the property was reserved. On appeal, the Court of Appeal for the Parish of Orleans reversed the judgment of the lower court and gave judgment in favor of the defendant, dismissing the plaintiffs' suit. The plaintiffs applied for and obtained a review by this Court. The matter is now submitted for our determination.
Plaintiffs contend that the Court of Appeal was without jurisdiction to entertain this controversy. The record shows that the plaintiffs moved to dismiss the appeal or transfer the cause to the Supreme Court when it was lodged in the Court of Appeal. The motion was based on the ground that the property in dispute exceeded $2,000 in value. The Court of Appeal denied the motion and rendered an opinion holding that the property was of less value than $2,000. The plaintiffs made no effort at that time to have this Court invoke jurisdiction in the matter. We have reviewed the opinion of the Court of Appeal and have arrived at the conclusion that the Court of Appeal had jurisdiction over the controversy. Be that *Page 392 
as it may, the cause is now before us for all intents and purposes and can be as fully reviewed as though the cause had been originally appealed to this Court.
The property involved in this controversy was adjudicated to the State on September 23, 1922, for the unpaid taxes of 1921. The Orleans Levee Board was authorized and directed by Act 99 of 1924 to construct the Bohemia Spillway to protect the City of New Orleans from the flood waters of the Mississippi River. The pertinent provisions of this act are as follows:
"Section 1. Be it enacted by the Legislature of Louisiana, That the Board of Levee Commissioners of the Orleans Levee District be and it is hereby authorized in its discretion in order to reduce the flood levels of the Mississippi River and to better protect the City of New Orleans from danger of overflow by the high waters of the Mississippi River, to construct or cause to be constructed on the east bank of the Mississippi River in the Parish of Plaquemines a spillway or waste wier, or other works, so located and designed according to plans and specifications as shall have been approved by the State Board of Engineers and the Mississippi River Commission.
"Section 2. That the Board of Levee Commissioners of Orleans Levee District be and it is hereby authorized to acquire by purchase, donation or expropriation the lands or other property necessary for the construction of such works. It shall also be authorized to receive and expend for said purpose any funds contributed to it by the United States Government or any of the Levee Districts of the State benefited by *Page 393 
said works, which said Levee Districts be and they are hereby authorized to make such appropriations for that purpose as to them seem meet and proper.
"Section 3. The Orleans Levee District is hereby required, as a condition precedent to removing any levees or taking possession of any property, to acquire by purchase or expropriation and to pay for all lands and property privately owned within the area covered by the proposed plan from the upper to the lower limits thereof and from the Mississippi River to the sea. * * *
"Section 5. That the Board of Levee Commissioners for the Orleans Levee District be and it is hereby authorized and directed to arrange with the Board of Commissioners for the Grand Prairie Levee District and the Board of Commissioners for the Plaquemines Parish East Bank Levee District whereby the bonded and other indebtedness of said two levee districts, as to the area to be affected by the proposed works, shall be acquired by said Orleans Levee District, be paid for by it, at values as of June 17, 1924, and cancelled; and said two levee districts be and they are hereby authorized, upon the completion of the plans and after their approval by the State Board of Engineers and the Mississippi River Commission, to consent to the removal, at the expense of the Orleans Levee District, of the Levee systems, of these two districts in that portion of the levee systems thereof as may be determined by the Orleans Levee District shall be removed." *Page 394 
After the spillway had been completed, Act 160 of 1926 was adopted by the Legislature. It provides in its title:
"To authorize the Board of Levee Commissioners of the Orleans Levee District to pay the debt, bonded and otherwise, of the Plaquemines Parish East Bank Levee District and to deposit with the State Treasurer funds sufficient to pay principal and interest of all outstanding bonds of the Plaquemines Parish East Bank Levee District; to authorize the State Treasurer to receive said deposits and redeem and pay said bonds; to relieve the State Treasurer from the requirement of withholding revenues of the Plaquemines Parish East Bank Levee District for the payment of principal and interest of said bonds; to relieve the Board of Levee Commissioners of the Orleans Levee District of any further obligations to the Plaquemines Parish East Bank Levee District and to the Property owners in Plaquemines Parish."
The body of Act 160 of 1926 provides in detail for the redemption of the bonds of the Plaquemines East Bank Levee District.
On November 9, 1938, the Richardson Realty Company, upon paying the taxes due for the year 1921, secured a certificate of redemption covering the property herein involved from the Register of the State Land Office. At the time the certificate was issued, the spillway had been constructed for some time.
From our appreciation of the provisions of Act 99 of 1924, the Legislature intended for the lands embraced in the spillway *Page 395 
to be set aside and removed from commerce.
The act provides for the acquisition of the fee title of the lands embraced in the spillway and for such title to be reposed in the Orleans Levee Board. While the act does not specifically state that the lands belonging to the State are to be dedicated, yet provision is made for the acquisition of all lands in that area belonging to State agencies or private persons. This, in our opinion, clearly shows that the Legislature intended that all of the lands embraced in the area of the spillway were to be set aside for the spillway and removed from commerce. When the Legislature authorized and directed the construction of the spillway, it clearly intended that the lands belonging to the State and used in furtherance of this project were to be set aside for that purpose.
"There is no sacramental form to be followed in dedicating property to public use." LaSalle Realty Company of Louisiana, Inc. v. City of New Orleans, 169 La. 1035, 126 So. 545, 546.
"A dedication may be either statutory or according to the common-law. 18 C.J. sec. 1, p. 18. A distinguishing difference between a statutory dedication and a common-law dedication is that the former operates by way of a grant and the latter by way of an estoppel in pais. * * *
"While in a common-law dedication there must be an acceptance by use or otherwise on the part of the public, this is not necessarily so in the case of a statutory dedication. 18 C.J. sec. 68, p. 73. The effect of *Page 396 
a statutory dedication is generally indicated by the statute itself." Arkansas-Louisiana Gas Co. v. Parker Oil Co.,190 La. 957, 183 So. 229, 240. See also: City of Shreveport v. Drouin, 41 La.Ann. 867, 6 So. 656; Brasseaux v. Ducote, La.App.,6 So.2d 769; Ford v. City of Shreveport, 204 La. 618, 16 So.2d 127.
"Such property is out of commerce. It is dedicated to public use, and held as a public trust, for public uses. It is inalienable by corporations. * * * "City of New Orleans v. Carrollton Land Co., 131 La. 1092, 60 So. 695, 696.
"There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation. This was the doctrine in the case of Jarvis v. Dean, already referred to, with respect to a street; and the same rule must apply to all public dedications; and from the mere use of the land, as public land, thus appropriated, the assent of the owner may be presumed." City of Cincinnati v. White's Lessee, 6 Pet. 431,31 U.S. 431, 440, 8 L. Ed. 452.
The doctrine laid down in the case of City of Cincinnati v. White's Lessee, supra, was followed in the cases of City of Shreveport v. Walpole, 22 La.Ann. 526, and City of New Orleans v. Carrollton Land Co., supra.
At the time Act 99 of 1924 was enacted, title to the property herein involved was lodged in the State of Louisiana. The *Page 397 
Plaquemines Parish East Bank Levee District had failed from oversight or some other reason to have the lands transferred to it. If the lands had been transferred to the Plaquemines Parish East Bank Levee District prior to 1924, this controversy would not have arisen.
It is suggested that Act 99 of 1924 had the effect of withdrawing the lands located within the spillway from the operation of Act 237 of 1924 for the reason that Act 99 is a special law and would have precedence over the general law set forth in Act 237.
Act 237 of 1924 has been construed to impliedly repeal the previous land grants and to revoke the rights of the levee districts to obtain title to lands adjudicated to the State for nonpayment of taxes. State ex rel. Fitzpatrick v. Grace,187 La. 1028, 175 So. 656; Airey et al. v. Tugwell, State Treasurer,197 La. 982, 3 So.2d 99. Be that as it may, the fact remains that at the time Act 99 of 1924 was enacted title to the lands involved herein was in the State, and the period for redemption under the law at that time had elapsed.
We have rested our opinion on the grounds that Acts 99 of 1924 and 160 of 1926 clearly show that the lands were to be set aside for the spillway, thereby removed from commerce, and the construction and use of the spillway thereafter constituted a deduction. Such being the case, when the plaintiffs applied for and obtained the certificate of redemption on November 9, 1938, the lands could not be redeemed for the reason that they had been previously dedicated *Page 398 
for spillway purposes and removed from commerce.
It is suggested that the defendants have only a right of servitude over the land.
This question is raised ordinarily at the time of the taking. However, in the present case the plaintiffs were not owners of the land at the time that the act authorizing the construction of the spillway was adopted or at the time the spillway was constructed. The title at that time was in the State. Moreover, the act, itself, requires the acquisition of the fee title of the lands embraced in the spillway.
The appellant contends that if Act 99 of 1924 and Act 160 of 1926 be construed as creating a dedication of public land in the spillway area, that such implied dedication would be violative of Article IV, sec. 12 of the Constitution. This section provides as follows:
"The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private; * * *."
Section 12 of Article IV of the Constitution is not applicable where property has been dedicated and set aside for public use.
The plaintiff contends that the defendant's failure to remove the levee adjacent to the property involved in this suit operates as an abandonment of this property for spillway purposes. *Page 399 
Section 3 of Act 99 of 1924 requires the defendant to acquire title to the property within the spillway area before it may remove the levee adjacent thereto. However, there is nothing in the act to indicate what portion of the levee is to be removed after title has been acquired. We do not find any provision in the act to the effect that failure to remove the levee adjacent to any property within the spillway area would in any way operate as an abandonment of that property. In fact, the amount of levee to be removed would depend upon the exigencies as they arose.
In Act 311 of 1942, the Legislature confirmed and quieted the defendant in the ownership and control of all public lands in the Bohemia Spillway, which was constructed by the defendant in obedience to Act 99 of 1924. This, in our opinion, is a legislative interpretation clearly showing that it was the intent of the Legislature to dedicate the lands involved herein to the defendant for the Bohemia Spillway. Our views are in conformity with this legislative interpretation.
It is suggested that Act 160 of 1926 is a local law and the required notice was not given before its passage.
We do not consider the acts creating or affecting the Bohemia Spillway to be local laws.
The City of New Orleans, which is coextensive with the Parish of Orleans, is the principal market of this State and the metropolis of the South. One of the most important ports for outgoing and incoming shipments is located within the City. It *Page 400 
is the principal railroad center of the State and the culmination of almost all of the waterways. The waters of many sections of the State flow into the Mississippi River and create a menace to the City. Commodities owned by citizens from all sections of the State are on consignment and stored in warehouses in this City. In fact, a large portion of the wealth from property, produce and other commodities of citizens throughout the State are located in the City. Members of families from all sections of the State are located in New Orleans. The interests, financial and otherwise, and welfare of the people of other sections of the State and the City are intermingled and inseparable. The economic and financial welfare of a majority of the citizens of this State would be greatly jeopardized if the City of New Orleans were damaged by floods. This information comes to us not only from common knowledge, but it is reflected in the records of this Court in various litigation involving successions and other matters.
For the reasons assigned, the judgment of the Court of Appeal for the Parish of Orleans is affirmed.
O'NIELL, C. J., dissents on the ground that there was no dedication of the land in contest or transfer by the State to the Levee Board, by Act 99 of 1924, or by any other act of the legislature, and hence the tax debtor had the right under the provisions of Act 47 of 1938 to redeem the land, on November 9, 1938; which land, according to the testimony offered by the Levee Board in this suit, particularly the testimony of the *Page 401 
civil engineer, J. C. d'Armas, Jr., has never been appropriated or used by the Levee Board as a part of the spillway, but is high land (3 1/2 feet above gulf level), adjacent to the levee.
 On Application for Rehearing.