71 So.2d 562

CITY OF NEW ORLEANS v. DOLL.

Nos. 40369, 40569.

Feb. 15, 1954.

Rehearing Denied March 29, 1954.

---

Delvaille H. Theard, New Orleans, for defendant-appellant.

Henry B. Curtis, City Atty., and Charles E. Cabibi, Asst. City Atty., New Orleans, for plaintiff-appellee.

McCALEB, Justice.

Warren A. Doll acquired from the State of Louisiana a certain portion of ground situated in the city of New Orleans, being Lot X of Square 1073, Third District, at a sheriff's sale held on February 11, 1949 in conformity with Act 237 of 1924, as amended by Acts 151 of 1926, 296 of 1944, 239 and 365 of 1948, which has been incorporated in the Revised Statutes as LSA–R.S. 47:2189 and 47:2190. On February 24, 1949, the

State issued its patent in favor of Doll, who forthwith recorded it in the conveyance office for the Parish of Orleans.

This property had been previously adjudicated to the State in default of a third person bidder at a sale for delinquent taxes due the State for the year 1931 on an assessment in the name of Joseph W. Sheldon. At the time of its adjudication, the lot was encumbered with a paving lien in favor of the City of New Orleans amounting in total, inclusive of penalties and interest, to the sum of $3,325.28. However, on February 9, 1951, the City adopted an ordinance waiving interest and penalties on all paving bills against city property and, by recomputation, the amount now due for paving is $1,964.33.

On September 20, 1950, the city brought this suit for the expropriation of the lot. Following a stipulation by the parties that the property had a valuation of $2,500, judgment was entered decreeing the city to be the owner and the sum agreed upon was deposited with the Civil Sheriff in full payment of the price. However, the city resisted the payment of the deposited funds to Doll contending that its paving lien should be first satisfied out of these proceeds.

Doll thereupon filed a rule in the proceedings in which he maintained that, having acquired the property from the State for its market value under the provisions of Act 237 of 1924, as amended, he had obtained a perfect title unencumbered by any prior tax or paving liens which may have rested thereon.

After a hearing on this issue, the district judge sustained the position of the city, resolving that, whereas Act 237 of 1924, as amended, purported to vest in the purchaser a clear and unencumbered title to the property sold by the State, the statute was in conflict with the provision of the city charter, Act 159 of 1912, as variously amended, relative to paving liens and that the sale did not operate so as to extinguish those liens for the statute, being a general law, could not be construed as repealing by implication the clear, irreconcilable provisions of the city charter, a special law.

Doll prosecuted two separate appeals from the adverse judgment which have been consolidated in this court and submitted for our decision.

The pertinent part of the city charter, Act 159 of 1912, as last amended by Act 338 of 1936, is Section 48 (j) which reads:

"From the date that the said statement or statements of assessments are filed in the Mortgage Office they shall act, in rem, as a first lien and privilege on each specific lot or portion of real property therein assessed. Such lien and privilege shall be superior to any pre-existing or subsequent vendor's lien, privilege or mortgage and shall remain in full force * * * until full and final payment of the assessment has been made, notwithstanding any subsequent sale or transfer of such

lot or portion of real property. Whenever any such lot * * * affected by such lien and privilege is sold for the unpaid City or State real estate taxes due thereon, and is adjudicated to the City or State, as the case may be, the fact of such adjudication * * * shall not have the effect of cancelling such lien and privilege by confusion, or otherwise, but such lien and privilege shall continue in full force and effect, and be enforcible against such lot or portion of real property until the same is fully paid and satisfied." [1]

Pointing to the concluding clause of the section declaring that the paving lien shall continue in force until it is fully paid and satisfied, the city attorney asserts that any adverse provision of the general law, with respect to sales by the State of previously adjudicated property, cannot prevail over this special provision in view of the well-established tenet that a general law passed subsequent to a special statute will not be regarded as repealing by implication the provisions of the special law which are inconsistent therewith. Supporting the proposition, he cites as controlling here the cases of Kearns v. City of New Orleans, La.App., 160 So. 470, and State ex rel. Ideal Savings & Homestead Ass'n v. City of New Orleans, 186 La. 705, 173 So. 179, wherein it was held, conformable to the above-stated principle, that Act 46 of 1918, a general

1. Similar provisions were contained in the original act and the other amendments thereto. See Section 42 of Act 159 of

statute relating to the prescription of paving liens, did not repeal the provisions of Section 42 of the city charter, declaring that the paving lien of the city shall remain in force until final payment has been made and that, therefore, the former act is inapplicable to property situated in the City of New Orleans.

While we, of course, recognize the legal principle invoked by the city, we find that it is not applicable in this case for the reason that the Legislature, in passing Act 237 of 1924, unequivocally expressed its intent to effectuate a repeal of any provisions of the city charter which might be contrary thereto. The title of that act declares that it is its purpose to regulate "the manner and terms on which property bid in for and adjudicated to the State for unpaid taxes may hereafter be sold, prescribing the duties of certain officers with regard thereto, and repealing all laws or parts of laws, general or special, inconsistent with or contrary to this act". The clause repealing general and special provisions inconsistent with the act is also set forth in its body, being Section 10 thereof. Thus, there is no question here of an implied repeal of the opposing provisions of the city charter; the repeal is express and clearly signifies the design of the Legislature that the provisions of the statute were to be paramount. See Sutherland Statutory Construction, Third Edition, Volume 1,

1912; Section 48 of Act 105 of 1921 and Section 48 of Act 346 of 1926.

Section 2021; State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656 and Emery v. Orleans Levee Board, 207 La. 386, 21 So.2d 418.

That the declaration respecting the existence of a paving lien contained in the city charter is in direct conflict with the provisions of Act 237 of 1924 cannot be gainsaid. In Peters v. Twogood, 167 So. 206, the Court of Appeal for the Parish of Orleans had occasion to consider the nature and purpose of the 1924 statute. There, the question for decision was whether a purchaser at sheriff's sale, held under Act 237 of 1924, took the property burdened with a lien in favor of the City of New Orleans for unpaid taxes assessed following its adjudication to the State. The court replied in the negative and proceeded to show that the statute provided a method by which the State was able to dispose of property adjudicated to it at a public auction for its market cash value, or for not less than its assessed value at the time of its adjudication. It was appropriately stated that the provisions of the act plainly contemplated that, by payment of the price, the purchaser acquires a title free of all prior charges (excepting acreage taxes for drainage purposes) against the property.[2]

The views expressed in Peters v. Twogood are amply sustained by the provisions of the statute. See also State ex rel. Fitzpatrick v. Grace, supra, where this court discusses the provisions of the act and comes to a like conclusion. In truth, Section 7 makes certain the legislative intent that the purchaser at the sheriff's sale obtains an unencumbered title, for it is there specified that the purchase price be turned over to the State Treasurer, who shall deduct the taxes and interest due at the time of adjudication of the property to the State and to any of its parishes, municipalities and instrumentalities "and shall pass the same to the credit of the State Tax Funds and to the accounts of said Parishes, municipalities and instrumentalities, and in due course, he shall pay the same over to the latter; the remainder, if any, he shall place to the credit of the general fund; * * *".

This design is further exemplified by consideration of the supplementary legislation. By Act 296 of 1944, Section 7 of the statute was amended so as to authorize the State Treasurer to use the purchase price to pay not only the state, parish and municipal taxes assessed against the property at the time of adjudication but all taxes assessed for the subsequent years up to the

2. Act 237 of 1924 supplanted Act 80 of 1888 which was known as the "Ironclad Act" because the highest bidder took the property free of all mortgages, liens, privileges and encumbrances except city and municipal taxes. See Section 5 of Act 80 of 1888, also discussion of its effect in Conservative Homestead Ass'n v. Conery, 169 La. 573, 125 So. 621 and Conservative Homestead Ass'n v. Flynn, 178 La. 17, 150 So. 564.

date of the sale by the State. And, by Act 365 of 1948, Section 7 was again amended so as to authorize the Treasurer to deduct from the sale price, in addition to all taxes, interest and costs due the state, parishes, municipalities or other agencies, the amounts due any municipality for paving liens operating against the property, it being provided that the purchase price should be distributed in the following order of preference: "First, taxes and interest due the state, and its parishes, and any of its agencies. Second, taxes and interest due the municipalities. Third, paving liens and interest due the municipalities". LSA-R.S. 47:2190.

■ Obviously, then, the price is dedicated to the liquidation of the mentioned charges on the property and all tax liens, paving liens or other encumbrances become extinguished when the sale is made. Any claim for their payment is referable only to the proceeds of the sale.

■ The judgment appealed from is reversed. It is now ordered that the sum of $2,500 on deposit with the Civil Sheriff for the Parish of Orleans, representing the amount for which the property described in the judgment has been expropriated by the City of New Orleans, be paid to appellant, Warren A. Doll, and that he further have judgment for all costs of these proceedings.

1. The statement of results relate to property adjudicated to the State during

MOISE, Justice (dissenting).

As a sitting judge of a court of last resort, I should not be, as said by a few, like angels of Heaven who are never disturbed by the miseries on earth because they are too satisfied to care.

I am disturbed by the majority opinion because of the consequences that might result to the City of New Orleans, Louisiana—an impairment of its credit and an interference with the security given to purchasers of City Paving Certificates in connection with its intensive paving program. The majority opinion is inequitable. The conclusions reached are not warranted from the language of the statute, Act 237 of 1924, as amended. The interpretation given to section 7 of Act 237 of 1924, as amended and re-enacted by Act 365 of 1948, by the writer of the majority opinion makes the constitutionality of the section questionable. A dissent is therefore urgent and insistent.[1]

The property in question was adjudicated to the State of Louisiana for unpaid taxes during the depression. The State acquired this property in 1931. Our statute provides that one may acquire property so adjudicated to the State by paying the assessed value of the property for the year in which the taxes were due. Act 296 of 1944, section 4.

The property herein involved was sold at public auction by the Civil Sheriff for the

the depression and sold under the terms and conditions similar to the instant case.

Parish of Orleans in the year 1949 for the sum of $200. The State received the money and, following the statute, made payment according to the priority enumerated by section 7 of Act 237 of 1924 as amended by Act 365 of 1948. The City of New Orleans received only $115.97 on its recorded tax lien of approximately $2,000. It accepted the payment, but it claimed the balance due for the recorded paving liens.

Section 7 of Act 237 of 1924, as amended by Act 365 of 1948, reads:

"From the amount thus received by him the Treasurer shall deduct the taxes, interest, and costs due to the State and to any of its parishes, municipalities and other agencies at the time of the adjudication of the property to the State, together with all taxes, interest and costs due the State and any of its parishes, municipalities, and other agencies for subsequent years up to the day of sale hereunder, also the amount due any municipality for valid and existing paving liens operating against said property; and shall transfer the same to the credit of the State Tax Funds and to the accounts of said parishes, municipalities, and other agencies, and in due course he shall pay the same over to the latter in the following order of preference: First, taxes and interest due the state, and its parishes, and any of its agencies. Second, taxes and interest due

the municipalities. Third, paving liens and interest due the municipalities." LSA–R.S. 47:2190.

The City of New Orleans expropriated the property herein involved for its public purposes. A valuation of $2,500 was fixed by the court, and such an amount was deposited in the Registry of the Civil District Court for the Parish of Orleans in order that claimants might proceed against it.

Act 301 of 1946, section 48(j) provides:

"From the date that the said statement or statements of assessments are filed in the mortgage office they shall act, in rem, as a first lien and privilege on each specific lot or portion of real property therein assessed. Such lien and privilege shall be superior to any pre-existing or subsequent vendor's lien, privilege or mortgage and shall remain in full force for the amount due in principal and interest, including court costs, if any, for collecting, until full and final payment of the assessment has been made, notwithstanding any subsequent sale or transfer of such lot or portion of real property. Whenever any such lot or portion or real property affected by such lien and privilege is sold for the unpaid city or state real estate taxes due thereon, and is adjudicated to the city or state, as the case may be, the fact of such adjudication to the city or state shall not have the effect of cancelling such lien and privilege by confusion, or otherwise,

but such lien and privilege shall continue in full force and effect, and be enforceable against such lot or portion of real property until the same is fully paid and satisfied."

The above is a part of the New Orleans City Charter and is found under paving and other liens. Below section 60 of the same act, we find section 4 which recites:

"That all laws or parts of laws in conflict herewith, particularly Act No. 58 of 1910, are hereby repealed, providing that nothing contained in this Act shall impair the effect of Section 47½ of Act No. 159 of 1912, as amended by Act No. 27 of the fourth extra session of 1935, and ratifying, validating and confirming all Refunding Paving Certificates issued or authorized to be issued pursuant to said Section 47½, and all assessments, taxes and charges authorized to be levied and collected for the payment thereof."

On trial, the Civil District Court for the Parish of Orleans followed the above statute and held that the recorded lien for paving remained in full force and effect until it was fully paid and satisfied. Doll appealed from this judgment. The majority opinion reversed the ruling of the trial court.

To give effect to the majority opinion, the law of registry must be abrogated. Doll knew, because of registry, or was presumed to know of the existence of the paving lien of nearly $2,000 at the time of his purchase. The statute, Act 301 of 1946, § 48(j), in no

unmistakable terms declares that this lien is one in rem which follows the property regardless of the person to whom it is sold. It made no exception for Doll.

The majority opinion states that property must be sold for its market value. We are asking ourselves whether $200 is a fair market value. How did the property obtain a valuation of $2,500 in the space of about one year? It was because of the paving improvements made to the property, and when we add this cost to the purchase price of $200 in 1949, it is understandable.

Doll should not have his pie and its eating and then not even leave to the City of New Orleans a crumb. For this property expropriated, the City of New Orleans has to pay a valuation of $2,500 which it deposited in the Registry of the Court. By reason of the majority decision, the city has to pay its paving lien certificate holders approximately $2,000. That makes the city pay $4,500. The mere statement shows the inequitability of the majority opinion.

The paving lien certificates of the City of New Orleans are sold all over the United States. They are advertised in the financial journals of the large cities. The full faith and credit of the City of New Orleans is pledged for the payment of these certificates. Act 301 of 1946, section 48(m, n, o).

The majority opinion holds that Act 237 of 1924, as amended, especially section 7, amended and re-enacted by Act 365 of 1948, supercedes section 48(j) of the City Char-

ter of the City of New Orleans, Act 159 of 1912, as amended, especially Act 301 of 1946.

We must read the provisions of the two acts together, section 7, relating to priority of payment out of the proceeds of sales of property adjudicated to the State, and section 48(j), which gives full force and effect to the paving liens and privileges of the City of New Orleans. Nowhere does the language of section 7, Act 365 of 1948, provide for an extinguishment of the paving lien, and nowhere does it make a divestiture of the sacred law of registry. The objects of the two sections are so clearly separate and distinct there is no conflict.

The majority opinion states:

"* * * In truth, Section 7 makes certain the legislative intent that the purchaser at the sheriff's sale obtains an unencumbered title * * *."

Nowhere does section 7 disclose any such legislative intent when it names an agent, the Treasurer of the State of Louisiana, to make priority payments as set out in the statute. If the legislature did intend what the majority opinion states that it did, I have grave doubts that such would have been constitutional. In Article 4, § 13, of the Constitution of 1921 it is provided:

"The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguish-

ment, in whole or in part, of the indebtedness, liability or obligation of any corporation or individual to the State, or to any parish or municipal corporation thereof; provided, the heirs to confiscated property may be released from all taxes due thereon at the date of its reversion to them."

The majority opinion further states:

"Obviously, then, the price is dedicated to the liquidation of the mentioned charges on the property and all tax liens, paving liens or other encumbrances become extinguished when the sale is made. Any claim for their payment is referable only to the proceeds of the sale."

If the legislature had intended any such concept, it would have so stated. The writer believes that it religiously refrained from coming to any such conclusion because of fear that such a provision would violate the constitutional mandate above recited.

The writer asks for a prayerful consideration of this dissent taken in connection with an application for rehearing, when and if made by the City of New Orleans.

The emergency is certain, and the issues are grave and all should be reconsidered as a whole.

For the reasons assigned, I respectfully dissent.