97 So.2d 448 (1957)
Henry BELL
v.
T. Andrew TYCER.
No. 4470.
Court of Appeal of Louisiana, First Circuit.
October 4, 1957.
*449 Mary Purser, Amite, for appellant.
Reid & Reid, Hammond, for appellee.
ELLIS, Judge.
Along about 1900 or 1908 a road was constructed which began at what is now Highway 51 and ran in a westerly direction so as to intersect another road running parallel with Highway 51. This road was constructed on what had been an old saw mill railroad bed. Approximately the first mile of this road from Highway 51 required several small bridges but thereafter the land was very low and swampy and at one point near the beginning of this swamp a 200 foot bridge was constructed as well as other smaller bridges further west.
The plaintiff in 1926 bought land along this road east of this so-called "long bridge" and again in 1952 bought additional land. Since then, from 1924 to 1928, the long bridge and other bridges west of it were taken up with the express permission of the Police Jury of the Parish of Tangipahoa and used to repair the smaller bridges on the eastern end of said road which intersected Highway 51.
In approximately 1938 the defendant, together with a nephew of one Mrs. Rosa Wright who owned property along the eastern end of this road, placed a gap across the road for the purpose of keeping the cattle of the defendant and of Mrs. Wright from coming into the corporation limits of the Town of Amite or, in any event, to confine the cattle on the land to the west of the gap. This gap at that time was placed near Mrs. Wright's home but when she returned she complained and the defendant moved the gap further west and built a gate across the road. This gate is located a short distance to the west of the corporation line of the town of Amite. The plaintiff and other Negro families own property and homes to the west of this gate and of necessity must and have used this road since it was constructed.
Plaintiff brought this suit in which he prays that the defendant be commanded to remove the gate or obstruction from the road and to have the said road declared a public road. Plaintiff alleges the road to be a public road.
The defense to the suit is that the road was never a public road and, in the alternative, in the event the court should hold that it was a public road, that it was not acquired through any grant or title but only upon work done by the public on the road more than 30 years previously, and accordingly that the public acquired only a servitude, and that thereafter the bridges along the said right of way were removed "and use of said right of way by the public was thereupon abandoned;" that no work has been done on said road with public funds for more than 30 years, and accordingly respondent now pleads in bar of any claim by the plaintiff herein as to the existence of any public road during the prescriptive period of 10 years provided by Article 789 of the Revised [LSA-] Civil Code of the State of Louisiana.
The case was duly tried and judgment rendered by our learned brother below in favor of the defendant. The main basis *450 of the District Court's judgment was a plea of prescription under Article 789, LSA-C.C.
From this judgment the plaintiff appealed.
There are two questions presented: (1) was the road in question a public road, and (2) if so, was the servitude lost by nonusage. It is undisputed that there was no deed or formal dedication of the road in question.
In considering the first question it must be remembered that mere sufferance or tolerance of the right of passage by owners of neighboring estates or by the general public is quite distinct from the dedication, either statutory or implied, of a roadway. Powell v. Porter, 172 La. 681, 135 So. 24; Martini v. Cowart, La.App., 18 So.2d 849, LSA-C.C. arts. 699, 727, 766. It is also well settled that no particular form or ceremony is necessary in the dedication of land to public use but all that is required is the assent of the owner of the land and the fact of its being used for the public purposes intended, it being sufficient that intention to dedicate be manifest, and that property be sold or purchased in reliance upon dedication, Municipality No. 2 v. Orleans Cotton Press, 1841, 18 La. 122, 36 Am.Dec. 624, 625; City Council of Lafayette v. Holland, 1841, 18 La. 286; Carrollton R. Co. v. Municipality No. 2, 1841, 19 La. 62; Linton v. Guillotte, 1845, 10 Rob. 357; City of Baton Rouge v. Bird, 1869, 21 La.Ann. 244; City of Shreveport v. Walpole, 1870, 22 La.Ann. 526; Emery v. Orleans Levee Bd., 1945, 207 La. 386, 21 So.2d 418, certiorari denied 65 S.Ct. 1572, 325 U.S. 879, 89 L.Ed. 1996; Brasseaux v. Ducote, La.App.1942, 6 So.2d 769; Faunce v. City of New Orleans, La. App.1933, 148 So. 57; La Salle Realty Co. of Louisiana v. City of New Orleans, 1930, 169 La. 1035, 126 So. 545.
It is further well settled that an implied dedication for public use which is of common law origin is recognized in Louisiana and that "a `tacit dedication' of property for public use is dedication arising from silence or inactivity, without express contract or agreement, as `tacit' means done or made in silence, implied or indicated, but not actually expressed, while `statutory dedication' involves some deliberate affirmative action or step, taken by landowner in compliance with statute, indicating purpose and intent to dedicate." Goree v. Midstates Oil Corporation, 1944, 205 La. 988, 18 So.2d 591, 592.
In order to decide the first question posed, viz., whether the road was a public road, it is necessary that the facts be examined, bearing in mind the law cited. The facts show that prior to 1900 or 1908 a saw mill was being operated by Mr. W. A. Graves not far from the intersection of the road in question and what is now Highway 51, and in order to log the mill he had thrown up dirt and built a railroad or what is commonly termed a dummy line. When he finished cutting in this location he moved his saw mill along about 1900 or 1908 (the testimony is not positive as to the exact date) the present road was constructed in part by convict labor which, of course, under the Constitution then and now could only be used under legislative authority and as provided in Article 3, Section 33 of the Constitution of Louisiana, LSA-Const., which was previously incorporated in the Constitutions of 1913, Article 196 and 1898, Article 196. Under the terms of this Article convict labor was limited to work "on public roads or other public works, or convict farms, or in manufactories owned or controlled by the State, under such provisions and restrictions as may be imposed by law * * *". We do not presume that the convict labor was used in violation of the law but do assume that the road in question was considered as a public road being constructed by public labor. In this state at one time the prisoner could be sentenced to hard labor on the public roads of a parish.
Mr. Battles who was in the employ of the Police Jury about the time the road was *451 built testified without objection that Milford Scarles who was one of the Police Jurors for the Parish of Tangipahoa at the time told him that the Graves saw mill gave the lumber, the people along the road did the work "but anything they had to buy, why, the Police Jury helped them out."
The defendant testified as follows:
"Q. Mr. Tycer, at the time you purchased the property from Amite Bank and Trust Company in 1925 or 1926, what was the condition of the road, which was near the south line of the property? A. It was a dirt road, had been put up by convicts some years before that. Part the way out and on out further out in the swamp it was just an old railroad there.
"Q. Was there a continuous usable road from Highway 51 clear on back? A. Well you could use it in dry weather, but I wouldn't say it was usable continuously.
* * * * * *
"Q. Earlier than that, had there been other bridges on the road? A. I thing so, I am pretty sure there was. Mr. Bankston built those bridges, I don't know just how soon that Iabout the time that they had the convicts in there.
* * * * * *
"Cross Examination By Miss Purser: Q. Mr. Tycer, you said that Mr. Bankston you thought, built the bridges, what Bankston? A. Maston Bankston.
"Q. Was he the Police Juror for the Third Ward? A. No, he was employed by the Police Jury I guess to build bridges."
It is also shown that along the eastern end of the road in question the following people live and have used this road continuously: Adrene Bruly, John McCall, Henry Bell, plaintiff, Mrs. Rosa Wright, Bernard Bornes, Mrs. Frances McNamee, Urban Jones, W. B. Coney and William Tycer, son of the defendant.
In addition three or four years prior to this lawsuit the plaintiff had built a church on his property and the members used this road until it became impassable due to log trucks hauling the defendant's timber and due to the fact that the obstruction prevented the working of the road west of Mrs. Rosa Wright's property. It is shown that the road had been worked in the past, however, by two different police jurors but the proof does not satisfy the three year requirement under LSA-R.S. 48:491. However, the fact that the road was worked by two different members of the police jury is evidence that it was considered a public road. When the parties living on this road bought their property they considered it as a public road and used it without any question until the first gap was placed across the road in order to keep cattle from coming out to Highway 51. At the time the defendant bought his property there was attached to a deed a map which is in evidence and on which is clearly shown the road in question. He purchased this property on the 16th day of December, 1925.
The testimony also reveals that permission was obtained from the Police Jury to take up the long bridge and to use the lumber on other bridges between it and Highway 51 or the east end of the road.
Thus we have a road built on private property without the least objection, partly by convict labor and under the supervision and with the aid and assistance of the police jury of the Parish of Tangipahoa and the entire road used by the public until the so-called long bridge was taken up with the permission of the Police Jury in the 1920's, and the balance of the road to the east continuously used without any objection until 1938 by the public and particularly those people who bought their property along this road, depending upon it as being a public road. Under these facts the road was impliedly or tacitly dedicated as a public road by the owner of the land at the time *452 it was constructed and was used by the public as such. Therefore, we hold that the road was a public road.
As to the second question to be decided, the facts show that the western portion of this road beginning at the long bridge was definitely abandoned, and the public lost its servitude through non-usage. However, it is well recognized that a portion of a public road may be lost through non-usage whereas the other portion may be retained by usage, once it becomes a public road. This was what occurred in the case of Paret v. Louisiana Highway Commission, 178 La. 454, 151 So. 768. In that case the Police Jury acquired a servitude over an additional ten foot strip of land on the sides of an old road but it was never taken possession of and never used by the police jury until after the lapse of more than ten years. Later they attempted to widen the old road using one of the ten foot strips but the court held that the police jury and the public had lost the servitude by non-usage on the ten foot strip.
In the case of Starnes v. Police Jury of Rapides Parish, La.App., 27 So.2d 134, 136, our brethren of the Second Circuit stated what they considered were the requirements necessary for the abandonment of public roads by a public body. They stated:
"In our opinion the abandonment of public roads must be evidenced:
"(1). By a formal act of revocation and a setting aside of the dedication of such abandoned roadways in accordance with the provisions of Act No. 382 of 1938 [LSA-R.S. 48:701 and note]; or,
"(2). By the relocation and the establishment and maintenance of such relocated road, all of which must be done under the authority and by the action of the governing body; or,
"(3). By the clear and well-established proof of an intent on the part of the governing body to abandon."
The facts show in the instant case an intention on the part of the Police Jury to abandon the western portion of this road beginning at the long bridge but this is not true of the eastern portion leading to the long bridge along which the various families live as above enumerated. Furthermore, the public ceased completely using the western end of this road in question after the long bridge was removed with permission of the police jury in order to repair the bridges on the eastern portion. If the police jury had intended to abandon the eastern portion they would not have given permission to re-use the lumber from the long bridge on that portion. The mere abandonment without a substitution of another road by the police jury would not alone be sufficient to satisfy the requirements of Article 789, LSA-C.C. It would also require non-usage by the public. In the present case the eastern portion of this road which runs past the plaintiff's property has been continuously used since its construction. The mere fact that a gap or gate was placed across the road contrary to the interests of the public and remained for more than ten years would not deprive the public of its servitude where the latter has continuously used it.
We conclude from the facts in this case that the Police Jury never intended to abandon the eastern portion of the road in question which runs adjacent to and in front of plaintiff's property as well as a number of other families along this road. The reason the other owners along this road are not complaining is because the road has been well worked and kept up at public expense and is open for them to travel. We further conclude that although the western end of this road was abandoned by the police jury and not used by the public for more than ten years, that the eastern portion which is in question in this lawsuit has constantly *453 been used by the public since its construction at public cost, and, therefore, the plea of prescription is overruled.
For the reasons given the judgment of the district court is therefore set aside and reversed and it is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Henry Bell, and against the defendant, T. A. Tycer, ordering the defendant to remove the obstruction or gate from across said road and it is ordered and adjudged and decreed that said road from Highway 51 as far west as the west corner of the property of Minette Phillips be declared a public road. It is further ordered that the defendant pay all costs.