TATE, Judge
(dissenting).
I respectfully dissent.
In my opinion, the plaintiff’s predecessor in title acquired no vested right before the lieu warrant was issued to him in 1942 by the Register of the State Land Office. This was then after the adoption of the 1921 constitutional provision that “In all cases the mineral rights on any and all property sold by the State shall be reserved * * * Art. IV, Section 2, La.Constitution of 1921. As will be shown, in 1942 the plaintiff’s predecessor in title was the holder only of a void 1562 patent, with no vested right to get any property in exchange for it.
Thus any acquisition of State lands stemming from a 1942 vesting of a right to receive them was subject to the absolute constitutional prohibition against the transfer of State mineral rights to private persons.
It is true that our Supreme Court has held that the holder under a lieu warrant issued prior to 1921 acquired a vested right to receive land together with the mineral rights — despite the fact that he had not selected and located any specific land until after the constitutional prohibition of 1921. State ex rel. Hyams’ Heirs v. Grace, 197 La. 428, 1 So.2d 683. (This holding is actually contrary to the practically uniform jurisprudence to the effect that the holder of a lieu warrant, or land certificate, calling for delivery of a certain acreage of land, does not acquire any vested right with regard to any particular land until he has actually made location of and application for the specific tract in question. See 73 C.J.S. Public Lands § 242. However, as the majority of this court noted, we are bound by this decision of our State Supreme Court.)
But the majority of this court has extended this holding an appreciable degree further. The majority has made into a vested right the mere privilege granted by the 1888 act to apply for and receive other lands in exchange for those described by the void patent.
For the present case does not concern the acquisition of State lands by virtue of a lieu warrant issued before the 1921 constitutional prohibition. Here, no application was made for any lieu warrant until 1942, which was after the effective date of the 1921 constitutional prohibition against the conveyance of State-owned minerals.
At the time of his application for the lieu warrant in 1921, the applicant had no vested property rights whatsoever. The error of the majority, in my opinion, was in holding that he did.
To demonstrate this, let us examine in more detail the position of the applicant as of 1942.
The present plaintiff’s rights are based upon the issuance in 1862 of a patent for 1137.-56 acres of land at the price of $1.25 per acre to Philip Simms. However, the State did not have title to the tract involved. The 1862 patent was therefore not effective as a transfer of land.
In 1862, Simms, the original patentee, had undoubtedly a right to the return of his money. But he did not have any right at that time to receive any other land. The right to seek the return of his money for the failure of the consideration was a personal action which prescribed in ten years. So far as the record shows, no action whatsoever was taken by the patentee or his successors or assigns to recover their money or to obtain any other land in exchange for that patent until 1942, eighty years later.
However, by Act 104 of 1888, the legislature granted to holders of patents to lands to which the State could not convey title, the privilege to apply for cancellation of the previous illegal or erroneous entry and to receive a lieu warrant to locate on the same class of lands as originally patented,
*356 Until any vested rights were acquired under the 1888 act, however, the privilege granted through it by the legislature was at all times subject to revocation or modification.
The general rule is, as stated at 73 C.J.S. Public Lands, § 235, p. 878: “States have the right to dispose of their public lands in any manner they see fit. The state does not surrender the dominion and control of the public domain until final and complete title has been issued, and in all cases of land claims where the fee to the land remains in the state, it has the right to establish, alter, and modify such regulations, from time to time, as may be deemed necessary in maturing an imperfect into a perfect title. * * *” In Louisiana, our Supreme Court has held that the legislature may repeal or withdraw a legislatively given right to acquire or to redeem State lands, and that such action of the legislature does not violate any vested right of those who did not theretofore acquire title to or redeem the land. Emery v. Orleans Levee Board, 207 La. 386, 21 So.2d 418; State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656.
In fact, by emergency legislation in 1942 — Acts 140, 141, and 142 — , our legislature repealed Act 104 of 1888 effective as of January 10, 1943, and provided that after such date no further lieu warrants should be issued or lands should be located pursuant to authority of the 1888 Act. Cf., State ex rel. Albritton v. Moore, 238 La. 728, 116 So.2d 502, 503.
If the legislatively-given right to obtain land in exchange for void patents can be repealed, it seems to me self-evident that such right or privilege is modified, when no vested rights have been acquired by issuance of a lieu warrant, by the intervening and overriding constitutional modification of the right in 1921, whereby no state lands may be transferred without reservation of the minerals to the State. Not only the executive, but also the legislature (and the courts), are bound by and must obey the constitutional mandate; and acts done in violation of the strict constitutional prohibition are null and void.
The writer recognizes the sincerity with which the majority is applying the judicially-created public policy doctrine disfavoring long-term separate ownerships of land and of the minerals under the land. The writer recognizes the soundness and validity of the jurisprudence establishing this doctrine. But jurisprudence inconsistent with this absolute requirement of our constitution, like legislation enacted in violation thereof, must yield to the Constitution itself.
For the foregoing reasons, the writer respectfully dissents.