385 So.2d 1233 (1980)
DEPARTMENT OF CULTURE, RECREATION & TOURISM of the State of Louisiana,
v.
FORT MACOMB DEVELOPMENT CORPORATION, Chef Enterprises, Inc. and National American Bank of New Orleans.
No. 10767.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
Rehearing Denied August 5, 1980.
*1234 William J. Guste, Jr., Atty. Gen., Ernest R. Eldred, and Warren E. Mouledoux, Sp. Asst. Attys. Gen., Baton Rouge, and Gerard H. Schreiber, Sp. Asst., New Orleans, for plaintiff-appellant.
Legier, McEnerny, Waguespack, Kuhner, Scoggin & Strong, Guy B. Scoggin, New Orleans, for defendant-appellee, National American Bank of New Orleans.
Sidney M. Bach, New Orleans, for appellees, Edmond G. Miranne, Sr., et al.
Before SAMUEL, BOUTALL and GARRISON, JJ.
SAMUEL, Judge.
Plaintiff, the Department of Culture, Recreation & Tourism of the State of Louisiana (now the Louisiana State Parks & Recreation Commission), filed suit to evict Fort Macomb Development Corporation and Chef Enterprises, Inc. from Fort Macomb, an historical site in eastern Louisiana, for non-payment of rent. Plaintiff also sued to cancel the lease to Fort Macomb, a sublease to Chef Enterprises, Inc. of a portion of the leased premises, a mortgage of the lease in favor of defendant, National American Bank, and an assignment of the lease from Fort Macomb Development Corporation to National American Bank. Defendants answered, denying plaintiff's right to the relief requested. In addition, the defendant bank affirmatively pled the defense of estoppel.
The trial judge found the rent to be in arrears and Fort Macomb to have violated an audit provision in a separate compromise agreement sufficient to justify eviction, but nevertheless dismissed the state's suit for eviction on the basis of estoppel. Plaintiff has appealed.
The record reveals that in 1965 Fort Macomb was in a state of total disarray, grown over with vegetation, and inaccessible to the public. Plaintiff wished to reestablish it as a landmark and to use it as a tourist attraction but lacked funds to make the necessary repairs. By special legislation,[1] plaintiff was authorized to lease the fort and the 16.03 acres around it. In pertinent part this legislation reads as follows:
"The commission may:
Lease lands belonging to the state of Louisiana and/or State Parks Commission known as Fort Macomb, located in *1235 the vicinity of U.S. Highway 90 and Chef Menteur, under its jurisdiction when it believes it advantageous to the state to do so in the most orderly development and improvement of state parks; such lease may be made after publishing an advertisement in the official journal of Orleans Parish setting forth a description of the lands to be leased, the time when bids therefor will be received and a short summary of the terms, conditions and purposes of the lease to be executed, which advertisement shall be published for a period not less than fifteen days and at least once a week during three consecutive weeks; however, such lease may not be entered into for a period in excess of twenty-five years with an option to renew for an additional twenty-five years; and further, the lease shall not be contrary to the terms of any other contract the commission has already entered into."
On February 24, 1966, plaintiff leased the property to Fort Macomb Development Corporation expressly under the authority of Act 158 of 1965. At the same time plaintiff and Macomb entered into an agreement for development of the property, with improvements to the fort, dredging of a harbor, and construction of docks and boathouse facilities. To finance the project, Macomb borrowed $275,000 from defendant, National American Bank. This loan was executed on July 9, 1971, and to secure the Loan Macomb mortgaged its lease to the National American Bank. In addition, Macomb assigned the lease to the bank.[2] Plaintiff intervened in both the mortgage and the assignment of the lease. The mortgage contained the following provision:
"... and the said State Park and Recreation Commission does covenant further that should there be any default by Fort Macomb Development Corporation in the performance of any obligation under this mortgage or under its lease obligation during the term of the mortgage, or while any sum be due or remain to be paid under this mortgage, the State Park and Recreation Commission will take no action as lessor prejudicial to the interest of mortgagee nor will it take any action which decreases the value of the security hereunder, or fail to take any action necessary to protect mortgagee's interest in such security."
A resolution by the State Park & Recreation Commission had been previously passed to authorize this action.
The bank loaned Macomb $275,000 which was used for improvements on plaintiff's land, including the dredging of a waterway and construction of thirty-eight boathouses.
Plaintiff attempts to have the mortgage of the lease cancelled on the theory that it was extinguished by confusion under Article 2217 of the Civil Code when the bank acquired the lease by assignment. However, the wording of the assignment was limited in its terms to exist "so long as the mortgage or any portion thereof remains unpaid ..." The assignment was also conditioned on the agreement by Macomb that "during the term of such lease it [Macomb] will undertake to perform all of the conditions and obligations of such lease for the account of National American Bank at the expense of assignor."
The wording of the lease, and the testimony adduced at the trial below, clearly shows that all parties treated this assignment of lease as a security device only, and at no time was it regarded as an absolute assignment to the bank. Through both law suits and negotiations between the State and Macomb, the lease was treated as though Macomb still owned it, and on some occasions the bank was not notified of or allowed to participate in negotiations and litigation involving the leased premises.
Article 2217 of the Civil Code provides:
"When the qualities of debtor and creditor are united in the same person, there arises a confusion of right, which extinguishes the obligation." LSA-C.C. Art. 2217.
In order for a mortgage to be extinguished by confusion, either the principal *1236 obligation securing it must be extinguished by confusion or the mortgaged property must be acquired by the mortgagee. However, there is no concept in Louisiana of partial extinguishment of an obligation by incomplete confusion of a principal obligation, nor where the mortgaged property is only acquired in part by the mortgagee.[3]
In Langley v. Police Jury of Parish of Calcasieu,[4] the court stated at page 305:
"`For confusion to occur the same person must acquire the full and perfect ownership of both sides of the obligation by a conveyance which is translative of title.'"
The assignment of the lease was not an act translative of title; it merely represented a security device in order to further secure the advance of money by the bank. Under such circumstances, confusion did not occur by the mortgagee bank's acquiring ownership of the mortgaged thing.
Next, plaintiff argues the mortgage and assignment of the lease were prohibited by Section 12, Article IV of the Louisiana Constitution of 1921.[5] This section prohibits the loan, pledge or grant of the funds, credit, property, or things of value of the state. The answer to this argument is that in the present case the state has not loaned, pledged or granted anything. Macomb in fact mortgaged its lease rights to the bank, and as such did not affect the state's property. The state merely intervened for the purpose of subordinating its leasehold rights to the bank's mortgage of the lease. The state did not loan, pledge or grant its lease rights. The action of the state did not violate the constitutional provision relied on by plaintiff.[6]
Next, the state argues the lease was void ad initio because it violates the general state leasing law, R.S. 41:1211, et seq., which provides any lease granted by the state "shall not be subject to mortgage, pledge, hypothecation, or seizure and sale." However, these restrictions are only applicable to "all leases made under the terms of this Part." that is, under the provisions of the general state leasing statute. The lease now before the court was executed pursuant to the authority granted by Act 158 of 1965, and nowhere in the general provisions on the leasing of state lands does it appear that the legislature in any way changed the provisions or validity of this special legislation applicable only to Fort Macomb.[7]
The state next argues the trial judge incorrectly applied the doctrine of estoppel in the present case. Estoppel has been approved by the courts of this state, and it has been held that the doctrine applies equally to the state as to individuals.[8] The doctrine of estoppel has been applied in Louisiana in both common law terminology and in civil law concepts.
Under the common law doctrine equitable estoppel is defined as the effect of the voluntary conduct of a party by which he is barred from asserting rights against another party justifiably relying on such conduct and causing him to change his position to his detriment as a result of such reliance. Consequently, there are three elements of estoppel: (1) a representation by action or word; (2) justifiable reliance on the representation; and (3) a change in *1237 position to one's detriment because of the reliance.[9]
The doctrine was discussed in civil law terminology in Burk v. Livingston Parish School Board,[10] in terms of unjust enrichment under Article 1965 of the Civil Code and under the concept that one cannot accept the benefits of an act and repudiate its obligations.[11] Using either common law or civil law terminology, all the elements of estoppel have been met in the present case. The state, by its actions and words, did many things to encourage the defendant bank to advance $275,000 to be used for improvements on the state's property. The state enriched itself to that extent at the expense of the bank. The state acted by intervening in the mortgage in order to subordinate its rights and to further covenant that it would take no action which would prejudice the bank's mortgage. The state went so far as to agree to take all action necessary to protect the bank's interest in the security. The testimony leaves little doubt the bank would not have made the loan without the state's guarantee to perform its part of the contract, and there is no evidence that the state raised the question of the validity of the lease or the bank's mortgage throughout all negotiations leading to the eventual $275,000 loan. On the contrary, the actions of the state indicate it considered all documents valid and binding between the parties. If the trial court had allowed cancellation of the lease, the state would have been able to claim the benefits of its contract and at the same time escape its contractual obligations. Such a consequence cannot be allowed.
Finally, the state argues it cannot be estopped to contest unauthorized actions by its officers. This argument is not valid. All actions taken by the director of the Louisiana State Park & Recreation Commission were authorized in advance by the commission. When he intervened in the act of mortgage to subordinate state park's rights in the lease to the bank's mortgage, he did so with the authority granted to him by virtue of a resolution of the commission passed by a unanimous vote of its members, and the language contained in the intervention by plaintiff is copied directly from this resolution of the committee, which resolution was attached to the act by which the state subordinated its rights to the bank's mortgage on the lease.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
NOTES
[1] Act 158 of 1965, R.S. 56:1690.
[2] This assignment to the bank poses one of the issues for our decision.
[3] See 36 Tul.L.Rev. 521, at 531.
[4] 201 So.2d 300.
[5] This provision was carried forward in the 1974 Constitution as Section 14, Article 7.
[6] See also Emery v. Orleans Levee Board, 207 La. 386, 21 So.2d 418, and Arata v. Louisiana Stadium and Exposition District, 254 La. 579, 225 So.2d 362.
[7] However, even if the state's position were correct, it should be noted state leases may be subleased, transferred or assigned by the original lessee, its sublessees, heirs or assigns with written approval of the state. R.S. 41:1216(B).
[8] See Reeves v. Leche, 194 La. 1070, 195 So. 542; State v. Register of State Land Office, 193 La. 883, 192 So. 519; Clark v. City of Opelousas, 147 La. 1, 84 So. 433.
[9] See State v. Gulf, Mobile & N.R. Co., 191 La. 163, 184 So. 711; American Bank & Tr. Co. v. Trinity Universal Ins. Co., La.App., 194, So.2d 164, Affirmed, 251 La. 445, 205 So.2d 35; and Babin v. Montegut Insurance Agency, Inc., La. App., 271 So.2d 642.
[10] 190 La. 504, 182 So. 656.
[11] See Succession of Monette, 26 La.Ann. 26; Theriot v. Michel, 28 La.Ann. 107; Sherer-Gillett Co. v. Bennett, 153 La. 304, 95 So. 777; and Horne v. Beattie, 167 La. 647, 120 So. 38.