(38 South. 610.)

No. 15,560.

In re LINDNER.

In re HOWCOTT.

(April 24, 1905. On Rehearing, May 22, 1905.)

TAX DEED — SUIT FOR POSSESSION — ILLEGAL SALE—TITLE IN STATE—MUNICIPAL TAXES— SALE—CORPORATIONS—PURPOSES — VALIDATING CHARTER.

1. One of the parties sues to be placed in possession. The other resists the suit of plaintiff, alleging that he has a legal title.

2. The former (Lindner) bought from the city treasurer. The assessment was not valid. The purchaser at tax sale, in whose name the property was assessed, never completed his tax purchase, and substantially abandoned any right, under circumstances which vitiate his purchase. The property was adjudicated to the state. Neither the party suing for possession, nor the party resisting on the ground that he had a better title from the state, proved up a legal title.

3. The property is in the state.

4. The state, in selling her property acquired at tax sale, is expected, through the tax collecting department, to collect her own taxes and those of the municipality in which the property is situated.

While the municipality may have property sold for the payment of its taxes, it cannot have property sold and vest title for its benefit exclusively. It having been forfeited to the state, it must be sold to pay state and municipal taxes due.

Nicholls, J., dissenting.

(Syllabus by the Court.)

Application by John F. Lindner for possession of property held under tax sale. William H. Howcott applied for an injunction. The judgment of the district court was affirmed by the Court of Appeal, and Howcott applies for certiorari or writ of review. Reversed, and demands of both parties denied.

William Winans Wall, for applicants. Theodore Cotonio, for respondent.

BREAUX, C. J. John F. Lindner, purchaser of a city lot and improvements at tax sale, situate within the limits of the city of New Orleans, asked to be placed in possession of the property by a decree of court. He holds the property under a tax deed executed by the city treasurer, Watson, dated the 7th day of November, 1901.

W. H. Howcott obtained an injunction to restrain Lindner from going into possession, on the ground that he had a legal title to the property, and that plaintiff, Lindner, is without any right to possession. Howcott claims under a deed executed by the auditor.

In reference to the Lindner title the facts are that, as before stated, Lindner bought

IN RE LINDNER.

from the city treasurer. The deed under which Lindner claims ownership of the property sets forth, in substance, that he (the treasurer), who appears therein for the city of New Orleans, sold in pursuance of the power vested in him by the Constitution, and especially by the acts of the Legislature of this state passed at the session of 1882, being Act No. 119, p. 167, and Act No. 170, p. 346, of the year 1898.

We will state at this time that the first act just cited grants the right to any political corporation, through its proper officer, to enforce the collection of the taxes due to it in the same manner as state taxes are collected.

Whilst Act 170 is the general revenue act for the year 1898, it contains the provision that the sale of property for taxes shall not invalidate or extinguish any claim of the state, parish, or municipality for taxes, and the further provision contained in all revenue acts that the assessors shall assess all property subject to taxation.

The property here was assessed by the state for the taxes of the year 1898. It was assessed in the name of J. P. Martinez, who bought in August, 1886. We will have occasion to refer to this deed specially.

Continuing in matter of Martinez title, we found that on the 10th day of August, 1886, the state tax collector of the lower district of New Orleans, in pursuance of the authority vested by Act No. 82, p. 104, of 1884, advertised the property to be sold, offered it for sale at public auction, and adjudicated the property to J. P. Martinez for the unpaid state taxes of the years 1871, 1873, 1876, 1877, 1878.

The deed to Martinez recites that the price paid was in full and final payment of all state, city, and municipal taxes on the property, and by the terms of this deed the purchaser assumed to pay "all the state" and "city taxes" on the property for the year 1880 and subsequent years. It is in point

to here state that the tax debtor, Antoine Blanchin, in whose name it was assessed for the number of years above mentioned, died in November, 1873, so that for the years prior to 1874 the taxes had been properly assessed, and were exigible from Blanchin, the living tax debtor.

It is in place to say, for reasons that will hereafter be stated, that on the 16th day of February, 1886, Charles Cavanac, state tax collector, by virtue of power vested in him by Act No. 96, p. 119, of the year 1882, and also in pursuance of amendatory laws thereto, offered this property at public sale for the state taxes for the year 1883. There was a default of bid, and in consequence the property was adjudicated to the state of Louisiana. It follows that the state must have abandoned the paper title she had, and in 1886 it was a second time offered at public sale, and sold to Martinez, as before stated.

We have traced Lindner's title to its origin, and included therein a reference to the tax deed of 1885, which is not directly connected with his title, but which, as to facts, has some bearing on the issues.

In reference to W. H. Howcott's title, the facts are that the Auditor of the state on the 1st day of May, 1901, sold the property to Howcott in pursuance of Act No. 80, p. 88, of 1888, and Act No. 126, p. 181, of 1896, as the property of Antoine Blanchin, which had been adjudicated to the state of Louisiana on the 16th day of February, 1885; that is, the title before referred to as a paper title.

The price covered, as recited in the deed, the amount of adjudication to the state, including state and levee tax for the year 1882, and the state taxes for the years 1880, 1881, 1883 to 1889, inclusive.

As well state here that Act No. 80, p. 88, of 1888, makes it the duty of each collector of the state taxes to prepare a list of immovable property bid in for, and adjudicated to,

"the state for the year 1880 and subsequent years," as shown by records of the conveyance office, which have not been otherwise disposed of by the state. This list was to be approved by the Auditor, and after return from the Auditor, the collector was to proceed at once to advertise for sale all immovable property appearing upon the list as property bid in and adjudicated to the state for the unpaid taxes of 1880 and subsequent years, and property once advertised that failed to sell was to be thereafter sold, and deed executed by the Auditor.

. The second law referred to in the Auditor's deed (that is, Act No. 126, p. 181, of 1896) is an amendment, and amplifies his powers in the premises. We will here mention that the Auditor's certificate shows that the property in question was adjudicated to the state of Louisiana a second time, and that the second adjudication was again for the unpaid taxes of 1880, 1881, 1882, and 1883, assessed against Antoine Blanchin, who departed this life, as before stated, in 1873, and that under the provisions of Act No. 80, p. 88, of 1888, it was offered for sale at public auction for taxes in July, 1889, and, no bidder offering to buy, it failed to sell.

The second offering at public tax sale was made in 1896.

The foregoing is a statement of all the facts. It only remains for us to state, as relates to the facts, that the learned judge of the district court decided that the title passed to Lindner, and, it follows, decided that Howcott had no claim to the property.

We have before us his well-considered written opinion. The Court of Appeal affirmed the judgment, in a decision also before us. The case is before us on an application of W. H. Howcott to have the proceedings reviewed, and prior judgment decreed null.

. The statutes do not seem to have contemplated that the Auditor should be invested with power to sell property assessed for taxes due prior to 1880.

The property unquestionably became the property of the state. It is the only inference to be arrived at after having considered Act 1884, p. 104, No. 82, and in view of the presumption it creates that an assessment of the property had been duly made. This act and that of 1871, relative to taxes, lead to one unavoidable inference—that by forfeiture the property passed to the state; that there had been a legal assessment made.

The fact of itself that the property was sold under the cited act gives rise to the legal presumption "that the property was assessed according to law," and, further, that legal adjudication was made of the property to the state. Section 3, p. 105, of the statute.

The title was placed in the name of Martinez and duly recorded. His deed shows that he assumed the payment of taxes of date subsequent to 1879.

The state, through her proper officers, substantially abandoned her right to the property acquired under the adjudication made to her for want of a bidder in 1885, by reoffering it for sale the year succeeding. Despite the last adjudication, because of the failure of the adjudicatee to pay the taxes assumed the title thereafter returned to the state; the adjudicatee, Martinez, having failed to pay, as before stated. We think the title is still in the state.

The state was the owner of the property at the time it was assessed in 1899. She had the power to have it assessed, but the city had no authority while the state was the owner to have it seized for taxes and sold for its own account as a tax creditor. The state could have it sold to pay its own and taxes due to the municipality. The municipality was without the power to wrest it from the state, sell it, and appropriate the proceeds of the sale for its own account. The title of the state must have some meaning. It does not lie within the power of its own municipal corporations to commence by helping themselves to anything or everything that

is available, and leave the creating authority without any part of the amount to which she is entitled for taxes. For that and other reasons, we think the whole matter should be relegated back to the state, with instructions to its tax department to sell the property for account of all parties concerned as tax creditors, state and city.

This brings us to a consideration of the W. H. Howcott title. It is based upon an adjudication to the state for the year 1882 in the name of Antoine Blanchin. We have noted the date of Blanchin's death. It was therefore null. No notice was ever given to any one who could possibly have been concerned. There was an absolute want of compliance with the article of the Constitution regarding notice to tax debtors.

Moreover, for reasons just mentioned, the only taxes legally assessed are those due prior to the year 1879. Under Act No. 80 of 1888, the Auditor was empowered to sell only those lands "bid in for and adjudicated to the state for taxes for the year 1880 and subsequent years."

We have seen there are no taxes due by the late Antoine Blanchin for those years.

The taxes are due by the tax purchaser by whom they were assumed. No proceedings against Blanchin can materialize into a title.

We have carefully considered the decision in State ex rel. Martinez v. State Tax Collector, 42 La. Ann. 679, 7 South. 796. There is no absolute similitude between it and the case before us.

Martinez, the tax purchaser, "who knew that he had not complied with his bid, wished to get the property without complying with his bid." The court held that in view of that fact he could not sustain his claim to title.

Here the buyer at first tax sale, Martinez, is not before us. If he were, he would be without title, under the cited decision.

The proper officers of the state, having, we infer, found that the title to the state under an assessment against a dead man for the year 1883 was null and void in the year 1886, reoffered the property, and sold it to J. P. Martinez for taxes, part of which was properly assessed.

We have stated before that the adjudicatee failed to complete the sale by paying taxes since 1879, which he had assumed to pay.

The property was owned by the state, and reverted to the state on the tax buyer's failure to pay these taxes.

The state could do as she pleased with the property.

Howcott is absolutely without authority to question the right of the state, and much less to claim a valid title against the state under proceedings which render the tax sale under which he holds entirely null and void.

It is therefore ordered, adjudged, and decreed that the judgment of the district court and of the Court of Appeal are avoided, annulled, and reversed; the demand of the plaintiff, Lindner, to be placed in possession, and the demand of Howcott, plaintiff in injunction, are denied—the title being in the state, and the property to be disposed of by the state in accordance with the tax laws bearing upon the subject. The costs of both courts to be paid by plaintiff suing for possession and appellee.

NICHOLLS, J., dissents.

### On Rehearing.

PER CURIAM. Lindner, appellee, urges that, inasmuch as Howcott was the plaintiff in injunction, as such he enjoined Lindner's writ of possession.

Further, inasmuch as to succeed he must show interest, and if his title is bad he has no interest, that the injunction should therefore fall, and costs be paid by him.

We take it, this is directed to the costs of the district court, for, unquestionably, those incurred on appeal are due by appellee.

Held, the plaintiff, Lindner, owes costs for his suit in the district court, and all proceedings therewith connected—his petition and in all matters connected with his claim for possession.

Appellant Howcott owes costs of his injunction in the district court.

It is ordered, adjudged, and decreed that the judgment heretofore handed down be amended by directing that the costs incurred by Lindner, claiming possession in the district court, be charged to Lindner, and the costs of injunction to Howcott.

And that appellee, Lindner, pay the costs of appeal.

As amended, the judgment remains the judgment of this court.

Applications for rehearings refused.