ROGERS, J.
 

 The public administrator, joined by 9 of the 13 heirs of Honoré Garnet, brought this suit against the widow and heirs of John F-. Lindner to annul a sale of certain real estate situated in the city of New Orleans made to John F. Lindner by said city for unpaid taxes assessed to Honoré Garnet.
 

 From a judgment in favor of plaintiffs, defendants appealed. <
 

 The record shows that Honoré Garnet, who died in the year 1865, purchased the property in the year 1848. On July 6, 1895, under an assessment in the name of Garnet, it was adjudicated to the, state of Louisiana for the unpaid state taxes for the year 1894. On November 30, 1906, it was sold to Lindner for the unpaid city taxes of 1904. In the year 1908 the;, property was redeemed by Lindner in the name of Garnet. This suit was filed on November 30, 1921.
 

 Plaintiffs attack defendants’ title on three grounds, viz.: (1) That the city tax sale was an absolute nullity, because the property had been previously adjudicated to the state; (2) that Lindner was not entitled to redeem the property, and, therefore, the redemption which he secured inured to the benefit of tjtie heirs of Honoré Garnet; and (3) that the description of the property in said sale is defective and inadequate, and does not sufficiently identify said property. ,
 

 1. The • position of plaintiffs under their first proposition is, necessarily, that the adjudication to the state vested in the adjudicatee a new and paramount title free .from any obligation whatever'to the municipality for the payment of its taxes, i
 

 The rights of the tax debtor and tax creditor, arising from the levying and collection of taxes, as well as the procedure in effecting a sale for their nonpayment, is purely
 
 *661
 
 statutory. The relevant statutes must therefore be examined and construed in order to determine the issue.
 

 The adjudication to the state was made, under the provisions of Act 85 of 1888 (the General Revenue Law) and Act 93 of 1899 (authorizing the levy of an annual tax for levee purposes, to be collected in the same manner as state taxes are collected and enforced).
 

 Section 31 of Act 85 of 1888 requires the state auditor to furnish three rolls to each tax assessor, which rolls, when properly filled out, are to he deposited, respectively, with the auditor, tax collector, and recorder of mortgages. Section 33 provides that upon the filing of the tax roll in the mortgage office a lien is immediately created on each piece of real estate therein described.', Section 34 prescribes that said filing shall be full notice to all parties in interest that the taxes are due and exigible. The seizure and sale of immovables for unpaid taxes is governed by section 53. It is provided, in this section, that the bid shall equal the taxes and costs; othenvise the property shall be adjudicated to the state. According to section 61, after the adjudication to the state, the property shall be continued to be assessed in the name of the owner for one year from the date of recording the act of sale to the state, and the various assessors are required to list and assess said property separately from other property.
 

 Section 62 accords the right
 
 to
 
 the owner, or any person interested personally, or as heir, legatee, creditor, or otherwise, to redeem, within 12 months, the immovable property adjudicated to it; “provided, no certificate of redemption shall be issued by the auditor until all taxes, state, parochial and municipal due up to the day of redemption have been paid on said property.”
 

 The sale to John IF. Lindner was made by the city of New Orleans under Act 170 of 1898 (the General Revenue Law) and Act 119 of 1882.
 

 Sections 32, 33, 34, 53, 61 and 62 of Act 170 of 1898 are, substantially, the same as the corresponding sections of Act 85 of 1888. Section 31 of the statute requires the assessors of the parish of Orleans to furnish a complete assessment roll to the comptroller of the city of New Orleans, as well as to the re-, corder of mortgages, state tax collector, and state auditor. And the rolls as thus prepared are to serve as the basis for all state and city taxation for the year in which they are made. Under section 61 it is not required that property in the city of New Orleans adjudicated to the state shall be listed and . assessed separately; the requirement in said city being that the property be continued by the existing squares and subdivisions.
 

 Act 119 of 1882, which was in effect when the adjudication to the state was made, grants to all political corporations within the state, acting through 'their proper officers, the right to enforce the collection of all taxes due said corporations in the same manner as state taxes are collected.
 

 A careful examination of the sections referred to, as well as of the other provisions of the cited statutes, fails to disclose that the tax lien created in favor of the state is superior to the tax lien created in favor of any of its subdivisions. Unless the legislative intent is clear, the court will not by construction give the tax lien of one governmental authority priority over the tax lien of another governmental authority.
 

 Moreover, there is. no intrinsic reason why the state lien should prime the lien of the municipality. Both classes of taxes are levied for the same purpose—the support of government. The municipal government is but a branch of the state government; the municipality is a part of the state; and the collection of the revenue for municipal pur
 
 *663
 
 poses is as important to the state as the collection of the revenue for state purposes.
 

 In recognition of this fundamental principle this court, in the ease of Bellocq v. City of New Orleans, 31 La. Ann. at pages 471 and 473, through Chief Justice Manning, said:
 

 “If it be true that the state tax primes every other lien to such an extent that a sale under its lien extinguishes all others, then the power of taxation delegated by the state to cities and parishes might become, if not inoperative, at least unproductive of benefit. A sale for the compulsory payment of the state taxes would deprive the cities and parishes of the power to compulsorily collect theirs. * * * Taxes are the pabulum of government. Without that food, the political body languishes and dies. The state did not create the city, and indue it with corporate life, and in the same instant benumb and palsy those functions, without the exercise of which life is soon extinct.”
 

 The purpose of the law in authorizing an adjudication for unpaid taxes to either taxing authority, the state or one of its subdivisions, is, primarily, to secure the taxes due on the property adjudicated without impairment of the lien of either. Such adjudication is made only in the absence of a bid' sufficient in amount to pay the taxes and costs. When a third person purchases property at a sale for delinquent state taxes, he assumes the burden of discharging the parish or municipal taxes due and to become due. When the state acquires the property, the law requires the state to protect the taxes of its subdivisions, since no redemption certificate can be issued by the state until all taxes, state, parochial, and municipal, due up to the day of redemption are "paid.
 

 The state does not acquire a perfect title to the property, since the former owner, or some other person in interest, may redeem it, until cut off from so doing by some action of the state taken more than 12 months after the recordation of the tax deed in the conveyance records. Muller v. Mazerat, 109 La. 116, 33 So. 104; Charbonnet v. Forschler, 138 La. 279, 70 So. 224.
 

 In Charbonnet v. Forschler, supra, where the right of the owner to redeem after the lapse of one year was contested, this court said, at page 281 of the opinion (70 So. 225):
 

 “ * * * It is manifest that the sole object of the revenue law was to collect taxes, and not for the state to purchase property. The state treasury has uses for all of the money to be collected for taxes; and the state is without interest in taking the property of the unfortunate tax debtor, and in holding it as owner. The right is reserved to the taxpayer to compel the tax purchaser to permit him to redeem the property within one year. After that time the purchaser, if he desires to do so, may resist the delinquent taxpayer in any effort to redeem the property sold. But this right to resist is a right given to the tax purchaser alone.
 

 “It has been the uniform custom of the auditor to permit tax debtors to redeem their property adjudicated to the state for delinquent taxes, and collect the taxes due, together with interest, penalties, and costs, at any time. And, this right has been construed by the Legislature also to exist in favor of tax debtors.”
 

 And, after discussing the pertinent provisions of the law, the opinion, at page 282 (70 So. 225), contains the following, viz.:
 

 “It is thus seen that the executive and legislative branches of the government have recognized the right of tax delinquents to redeem their property more than twelve months after said property had been adjudicated to the state for delinquent taxes.”
 

 In Alter v. Shepherd, 27 La. Ann. 207, the court said:
 

 “The sole object of the state is to collect its revenues, and not to destroy rights, further than is absolutely necessary to effect such collection.”
 

 And it was held in that case that the right to redeem existed in the owner or quasi owner under the prescribed conditions.
 

 The positive requirement of the law is that subsequent to the adjudication to the state the property shall, during the period reserved for its redemption, continue to be listed and assessed in the name of its former owner. In view of the jurisprudence to which we have referred, this can only mean that the property shall continue to be listed
 
 *665
 
 and assessed in the name of its former owner until the state has parted with its title. In these circumstances, can it he contended that the municipality is prohibited from proceeding against the property for its taxes due thereon? We think not. In our opinion, the municipality is authorized to sell the property to satisfy its tax lien. Such sale, of course, is of necessity subject to the rights of the state. The title conveyed by the city to the purchaser at its subsequent tax sale is inchoate, to become perfect only when said purchaser has redeemed the property from the state, and thereby satisfied its claim for taxes, penalties, and costs. This right of redemption exists until it is cut off by some action of the state in disposing of the property otherwise. See Muller v. Mazerat, cited supra.
 

 The cases of In re Lindner, 114 La. 895, 38 So. 610, and Neal v. Pitre, 142 La. 738, 77 So. 582, are cited on behalf of plaintiffs as holding that a municipality is without power to sell for its taxes property which had been previously adjudicated to the state for its taxes.
 

 As we understand the purport of the decision in Re Lindner, 114 La. 895, 38 So. 610, it is that the state in selling property acquired by it at tax sale, in addition to collecting its own taxes, is expected to protect the taxes of the municipality; and that, while the municipality may have the property sold for its taxes, it can only do so subject to the payment of the taxes due the state. This is borne out by the syllabus, paragraph '4 (by the court itself) which reads:
 

 “4. The state, in selling her property acquired at tax sale, is expected, through the tax collecting department, to collect her own taxes and those of the municipality in which the property is situated.
 

 “While the municipality may have property sold for the payment of its taxes,
 
 it cannot have property sold and vest title for its benefit exclusively. It having been forfeited to the state, it must be sold to pay state and municipal taxes due.” (Writer’s italics.)
 

 The decision would therefore seem to be in accord with, rather t(ian opposed to, the views which we have hereinbefore expressed.
 

 In Neal v. Pitre, cited supra, both sales, the one to the state and the other to defendant’s author, appear to have been made in satisfaction of state taxes. The court held the second sale to be invalid upon the theory that the only method by which property adjudicated to the state could be sold was under the provisions of section 61 of Act 170 of 1898. This was clearly erroneous, since the provision of the statute relied on to support the announced rule is not mandatory. It merely provides that the tax collector
 
 “may sell
 
 the same” (the adjudicated property) “after the expiration of twelve months under Act 80 of 1888, as the property' of the state.” (Writer’s italics.) The remedy is not exclusive, because, as we have heretofore seen, the property may be redeemed at any time before said sale by the owner or by any other interested party.
 

 2. Plaintiffs next contend that John F. Lindner was not entitled to redeem the property from the state, and that the redemption which he secured inured to them as heirs of Honoré Garnet. Such is not the law. It is true that the contention finds support in the decision of Neal v. Pitre, referred to supra. That case, however, stands alone in the jurisprudence, and contains no references whatever to those cases holding a contrary view.
 

 In the first place, the statute itself seems to be almost too plain to require construction. It provides that the redemption may be made by the “owner, or
 
 any person, interested
 
 personally, or as heir, legatee, creditor,
 
 or otherwise.”
 
 (Writer’s italics.) Clearly, therefore, not only the owner/his heirs, legatees, or creditors may redeem the property, but also any other person holding an interest may do so.
 

 In McDougall v. Monlezun, 39 La. Ann. 1005, 3 So. 273, this court said;
 

 
 *667
 
 “A tax sale is not necessarily canceled and • annulled by a certificate of redemption. * * * If the certificate is made in favor of the original owner, it is competent for the purchaser to show that he made the payment out of his own funds” and with what intention.
 

 The quoted language is cited approvingly in Muller v. Mazerat, cited supra.
 

 In Richards v. Nylka Land Co., 143 La. 650, 79 So. 208, this court said:
 

 “It is now an established rule, recognized by our, jurisprudence, that the word ‘owner,’ as used in the revenue law [section 62, Act 170 of 1898] does not only mean one who owns by a perfect title, but also includes one who possesses as owner”—citing Bentley v. Cavallier, 121 La. 60, 46 So. 101.
 

 See, also, Hayes v. Fridge, 156 La. 932, 101 So. 270.
 

 3. The property is described in the tax deed as follows:
 

 ,“A certain lot of ground and improvements thereon, situated in the Third district of the city of New Orleans, designated as lot No. 9 in square No. 1571, bounded by O’Reilly, Dupre, Aubry and Clay streets, and measures 125 feet front on O’Reilly street by 100 feet in depth.”
 

 In the act of sale under which Honoré Garnet acquired, the same municipal district, square number, and street boundaries are given, and the property is described as four lots of ground with an aggregate. measurement of 100 feet on Dupre street and 125 feet on O’Reilly street. The lots in question form the corner of Dupre and O’Reilly streets. It is not shown that Garnet nor his heirs owned any other property in said square; nor that the heirs of Garnet paid any taxes on the property in question from 1893 until the present date. We think that the property is sufficiently identified by the description contained in the tax deed. Muller v. Mazerat, cited supra; Weber’s Heirs v. Martinez, 125 La. 663, 51 So. 679; Baldwin Lumber Co. v. Dalferes, 138 La. 507, 70 So. 493, and authorities therein cited.
 

 The decisions in Re Lindner and Neal v. Pitre, referred to supra, in so far as they conflict with the views herein expressed, are, hereby overruled.
 

 For the reasons assigned, the judgment .appealed from is set aside, and it is now ordered that there he judgment in favor of defendants ahd against plaintiffs, rejecting plaintiffs’ demands and dismissing their suit at their costs.
 

 BRUNOT, J., concurs in decree.
 

 O’NIELL, C. J., is of the opinion that the judgment appealed from should be affirmed.