621 So.2d 826 (1992)
The BOARD OF COMMISSIONERS OF The ORLEANS LEVEE DISTRICT
v.
Ron GOMEZ, Secretary of the Department of Natural Resources of the State of Louisiana, and the Department of Natural Resources of the State of Louisiana.
No. 92 CA 0817.
Court of Appeal of Louisiana, First Circuit.
November 30, 1992.
Richard J. McGinity, Gary Benoit, New Orleans, for plaintiff-appellee Bd. of Com'rs of the Orleans Levee Dist.
*827 Malcolm A. Meyer, Beverly K. Baudouin, New Orleans, for intervenor-appellant Gulf Coast Oyster Co., Ltd. St. Pauls Episcopal Church.
Robert H. Carpenter, Jr., Michael Gee, Baton Rouge, for defendant-appellant Dept. of Natural Resources State of La.
W. Matthew Campbell, New Orleans, for intervenor-appellant Jeanne Marie Favret Bourg, et al.
Before LOTTINGER, C.J., and CARTER and LEBLANC, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment granting a permanent injunction and declaratory relief.

BACKGROUND
In 1924, the Louisiana Legislature enacted Act 99, which authorized the Board of Levee Commissioners of the Orleans Levee District (Levee Board) to acquire by purchase, donation, or expropriation the lands or other property necessary for the construction of the Bohemia Spillway in Plaquemines Parish. The spillway was constructed between 1925 and 1926.
In 1942, the Louisiana Legislature passed Act 311, which stated, in pertinent part, as follows:
the right, title, ownership and possession of the Board of Levee Commissioners of the Orleans Levee District to all public lands in the area of the Bohemia Spillway between Bohemia Plantation, above, and Cuselich Canal, below, and from the river to the sea subject to whatever valid leasehold rights as may have been granted by the Grand Prairie Levee District on lands previously granted and conveyed to it, prior to the passage of this Act, be now confirmed, quieted and acknowledged, it being recognized that said rights, ownership and possession came into existence when said Orleans Levee Board located and constructed said Bohemia Spillway in the year 1925.
In 1984, the Louisiana Legislature determined that the Bohemia Spillway was no longer needed and, in Act 233 of 1984, mandated that the Levee Board return to the original owners property acquired by expropriation or by purchase under threat of expropriation in order to create the spillway. Act 233 of 1984 provided as follows:
Section 1. Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation. Neither the provisions of this Act nor any actions pursuant to this Act shall affect the title to land which was the subject of litigation on the effective date of this Act.
Section 2. The secretary of the Department of Natural Resources shall have rule making and procedure making authority consistent with the Administrative Procedure Act, R.S. 49:950, et seq., for the purpose of establishing procedures and guidelines for the receipt and evaluation of applications, notification of applicants, review of denials by hearings, relaxation of technical rules of evidence, settlement and distribution of funds for successful applications, and any other rules and procedures reasonably necessary for the orderly implementation of the return ordered herein. The secretary shall proceed immediately upon the effective date of this Act with steps necessary for the development and adoption of rules and procedures to begin the implementation *828 of the provisions of this Act by January 1, 1985.
Section 3. The Board of Levee Commissioners of the Orleans Levee District shall provide a thorough accounting to the secretary of the Department of Natural Resources, or his designee, concerning all revenues received from the affected property. The information so provided shall be made available to applicants. The board shall comply with the spirit and letter of the rules and regulations adopted and promulgated by the secretary of the Department of Natural Resources.
Section 4. The secretary of the Department of Natural Resources shall begin steps by January 1, 1985, to notify affected persons.
Section 5. The return of property by the board to the owners or their successors shall be subject to all servitudes and rights-of-way, whether acquired by expropriation or otherwise, or surface or mineral leases, or other valid contracts executed by or with the board prior to the effective date of this Act. Any deed whereby any property is returned shall state that such property is subject to such rights. Any party to a contract in effect on the effective date of this Act with the board concerning property affected by this Act shall be entitled to make payments and give all notices required or permitted under such contract to the secretary until the title to the property affected has been transferred. When such contracts provide for renegotiation of rent between any person and the board, or provide that any person may seek approval by the board, such person shall be entitled to renegotiate such rent or to seek and obtain such approval from the secretary until the title to the property affected has been transferred. Any sum deposited with the secretary pursuant to this Act which represents rent, royalty or other sum attributable to land being returned, shall be paid by the secretary to the appropriate persons.
The legislature outlined a procedure for the return of certain spillway property to the original owners or their successors in Act 819 of 1985, which provided, in part, as follows:
The board shall, within sixty days of the receipt of a certification from the secretary, take action to return the ownership to persons of corporations certified as owners or successors to owners from whom the property was acquired by expropriation or by purchase under threat of expropriation.
By Acts 1992, No. 847, the Louisiana Legislature amended and reenacted Section 1 of Act 233 of 1984 as follows:
Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation, act of convenience, or otherwise, including but not limited to sale or transfer subsequent to an adjudication for the nonpayment of taxes.

FACTS
In the spring of 1991, the Secretary of the Department of Natural Resources (Department) certified that several tracts of property in what was formerly the Bohemia Spillway must be transferred to the successors of the previous owners. The Levee Board applied for an administrative appeal, which was denied.
*829 Thereafter, on May 2, 1991, the Levee Board filed suit for declaratory judgment, a temporary restraining order, and a preliminary and a permanent injunction against the Department. In its petition, the Levee Board alleged that it was entitled to a judgment declaring it to be the owner of certain tracts in the former Bohemia Spillway and sought to enjoin the Department from certifying that certain other tracts should be transferred to the successors of previous owners of the land. The Levee Board's contentions addressed two different types of properties, namely tax-adjudicated tracts and subject-to-litigation tracts.

A. TAX-ADJUDICATED TRACTS.
Prior to 1924, the state acquired certain tracts of land as a result of the owners' failure to pay ad valorem taxes.[1] The owners of many of these tracts allegedly redeemed their property. The Levee Board contended that the "redemptions" were invalid for purposes of entitling the "redeeming" persons to the return of property pursuant to Act 233 of 1984 and Act 819 of 1985. The Levee Board subsequently acquired these tracts from the owners through acts of sale.
In its petition, the Levee Board alleged that the "redemptions" and subsequent "sales" of the property to the Levee Board were not transfers of title, but were merely convenient means of settling claims. Accordingly, the Levee Board reasoned that the properties at issue were not acquired by the Levee Board by expropriation or under threat of expropriation and, therefore, were not affected by Act 233 of 1984, as amended. The Levee Board further contended that the lands it acquired as a result of non-payment of taxes were dedicated for public use as of July 30, 1924, the effective date of Act 99 of 1924, and could not thereafter be validly redeemed by former owners. Therefore, the return of these tracts was not required by Act 233 of 1984, as amended.

B. SUBJECT-TO-LITIGATION TRACTS
The Levee Board alleged that these tracts were the subject of litigation on June 29, 1984, the effective date of Act 233 and, as such, were specifically excluded from the provisions of Act 233.[2] The Levee Board claimed that these tracts were the subject of Succession of Burat (Buras) v. Board of Levee Commissioners of the New Orleans Levee District, 469 So.2d 1022 (La. App. 4th Cir.), writ denied, 475 So.2d 1095 (La.1985), cert. denied, 475 U.S. 1018, 106 S.Ct. 1204, 89 L.Ed.2d 317 (1986), which litigation was commenced prior to the effective date of the act.
On July 15, 1991, Gulf Coast Oyster Company, Ltd. and St. Paul's Episcopal Church intervened in the Levee Board's suit, claiming entitlement to tracts 15 and 115.[3] On February 11, 1992, several heirs of Bernard Favret also intervened in the Levee Board's suit, claiming entitlement to tracts 102, 105, and 108.[4] The intervenors claimed that their ancestors-in-title owned property which had been adjudicated to the state for non-payment of taxes, that the property was redeemed prior to the dedication of the land for public use, and that the property was subsequently acquired by the Levee Board by expropriation or under threat of expropriation. The intervenors contend that, pursuant to Act 233 of 1984, *830 they are entitled to the return of the property.
After a trial, the trial court rendered judgment in favor of the Levee Board, declaring that the Levee Board has title to certain lands and that certain tracts of land are not subject to certification by the Department for return to the successors of prior owners.[5] The trial court also declared that certain tracts were exempt from the provisions of Act 233 of 1984 because they were subject to litigation on the effective date of the act.[6] Accordingly, the trial court determined that these tracts were not subject to certification by the Department. The trial court also issued a preliminary and permanent injunction against Department's certification that the Levee Board must relinquish certain tracts of land to the successors of its former owners.[7] The trial court also recalled the certifications of Tracts 015, 028, 030, 115, 133, 205, and 210 previously issued by the Department.
From this adverse judgment, the Department,[8] the Favret intervenors,[9] and the Gulf Coast-St. Paul intervenors[10] appeal.

TAX-ADJUDICATED TRACTS
The dates and events pertinent to the analysis concerning the tax-adjudicated tracts are set forth below:

*831
 DATE OF RECORDATION DATE OF
 ------------------- -------
TRACT NO. OF ADJUDICATION REDEMPTION
--------- --------------- ----------
 015 8/13/23 10/7/24
 022 8/13/23 12/2/25
 028 11/1/21 1/28/25
 030 10/18/22 1/28/25
 045 11/4/21 1/27/26
 099 5/31/16 11/20/25
 102 11/1/21 10/7/24
 105 11/1/21 10/7/24
 106 10/18/22 12/11/25
 108 11/4/21 10/7/24
 110 10/18/22 12/29/23
 115 8/13/23 10/7/24
 120 11/1/21 5/18/25
 129 11/1/21 7/1/25
 133 10/18/22 5/25/25
 140 11/1/21 11/21/25
 142 8/13/23 6/18/25
 143 10/18/22 6/18/25
 148 8/20/24 7/23/25
 149 8/20/24 7/20/25
 157 10/18/22 3/30/25
 158 10/18/22 3/30/25
 177 8/20/24 2/23/25
 179 8/13/23
 196 10/18/22 11/20/25
 205 8/13/23 5/25/25
 210 10/18/22 5/25/25
 214 10/18/22 11/9/38

After the above described tracts were adjudicated to the state for non-payment of taxes, all tracts, with the exception of tract 179,[11] were redeemed and all, with the exception of tract 214,[12] were subsequently purchased by the Levee Board. The acts of sale, through which the Levee Board acquired the properties, indicate that the Levee Board was authorized to conduct the sales pursuant to a resolution adopted by the board on May 20, 1925.
Under the law in effect at the time of the alleged redemptions, property forfeited for non-payment of taxes could be redeemed within one year of the date of recordation of the tax sale by paying the price given, including costs and five percent penalty with interest at the rate of one per cent per month. LSA-Const. Article X, § 11 (1921).[13] In Gamet's Estate v. Lindner, 159 La. 658, 106 So. 22, 24 (La.1925), the court held that the purpose of the law authorizing the adjudication of property to the state for unpaid taxes is the collection of taxes, not the acquisition of property. The court explained that when the state acquired property via adjudication for unpaid taxes, "[t]he state does not acquire a perfect title to the property, since the former owner, or some other person in interest, may redeem it, until cut off from so doing by some action of the state taken more than 12 months after the recordation of the tax deed in the conveyance records." Gamet's Estate v. Lindner, 159 La. 658, 106 So. at 24.
*832 In the instant case, tracts 148, 149, and 177 were redeemed within the year of the recordation of the adjudications to the state for non-payment of taxes. Accordingly, we find that these properties were acquired by the Levee Board by expropriation or under threat of expropriation and are entitled to the benefits of Act 233 of 1984, as amended, and Act 819 of 1985.
Even after the one-year redemptive period has elapsed, tax debtors or other interested persons nevertheless may redeem property adjudicated to the state as long as the title to the property is in the state or its political subdivisions and not contracted for sale. LSA-R.S. 47:2224; Fiedler v. Pipes, 236 La. 105, 107 So.2d 409, 411 (1958). However, if, after the redemptive period has passed, property adjudicated to the state for non-payment of taxes is dedicated for public use, redemption is precluded. Emery v. Orleans Levee Board, 207 La. 386, 21 So.2d 418 (La.1945). See also, Fiedler v. Pipes, 107 So.2d at n. 2.
Although the Levee Board strenuously argues that the lands lying within the Bohemia Spillway were dedicated to public use upon the passage of Act 99 of 1924, we find that this position is not supported by the wording of Act 99 of 1924 or the subsequent jurisprudence involving this issue.
In passing Act 99 of 1924, the Legislature authorized the Levee Board "in its discretion in order to reduce the flood levels of the Mississippi River and to better protect the City of New Orleans from danger of overflow by the high waters of the Mississippi River in the Parish of Plaquemines, to construct or cause to be constructed on the east bank of the Mississippi River a spill way...." In this legislation, the Legislature also authorized the Levee Board to "acquire by purchase, donation or expropriation the lands or other property necessary for the construction" of such spillway. The legislation does not mandate the creation of the spillway nor does it dedicate all property which subsequently may be acquired to effect the construction of the spillway.
Moreover, in Emery v. Orleans Levee Board, 21 So.2d at 421-22 the court stated:
There is no particular form or ceremony necessary in the dedication of land to public use. All that is required is the assent of the owner of the land, and the fact of its being used for the public purposes intended by the appropriation.... [t]he same rule must apply to all public dedications; and from the mere use of the land, as public land, thus appropriated, the assent of the owner may be presumed. (citations omitted).
Although the court in Emery v. Orleans Levee Board, 21 So.2d at 421, noted that Act 99 of 1924 did not expressly state that the lands acquired for the Bohemia Spillway were to be dedicated to public use, the court determined that the creation of the spillway ultimately resulted in a dedication of the land therein to public use. The court noted "that Acts 99 of 1924 and 160 of 1926 clearly show that the lands were to be set aside for the spillway, thereby removed from commerce, and the construction and use of the spillway thereafter constituted a ... [dedication]." (emphasis added). Emery v. Orleans Levee Board, 21 So.2d at 422.[14]
In determining whether the land within the spillway had been dedicated to the public, the court in Emery examined the use of the land and determined that the "construction and use" of the spillway constituted a dedication to public use. The court did not determine that expropriated land is presumed to be dedicated to public use as of the effective date of the act authorizing the expropriation.
Moreover, in 1942, the Louisiana Legislature adopted Act 311, which provided, in pertinent part, "[t]hat the right, title, ownership and possession of the Board of Levee Commissioners of the Orleans Levee District to all public lands in the area of the Bohemia Spillway ... be now confirmed, quieted and acknowledged, it being recognized that said rights, ownership and possession came into existence when said Orleans *833 Levee Board located and constructed said Bohemia Spillway in the year 1925." In Richardson & Bass v. Board of Levee Commissioners of Orleans Levee District, 231 La. 299, 91 So.2d 353, 371 (La.1955), in clarifying language on second rehearing, the court stated, "the construction of the Bohemia Spillway proposed by Act 99 of 1924 became a fait accompli in 1926. Upon its completion, it became public property, dedicated to meet the public emergency...." (emphasis added).
Clearly, the lands of the Bohemia Spillway were not actually dedicated to the public until after the acquisition of the lands and the construction and use of the spillway. However, the courts have yet to determine the exact moment at which the property which was subsequently part of the Bohemia Spillway became dedicated to public use so as to preclude its redemption by the former owners.
In the instant case, we find that the properties could not have been dedicated for public use prior to May 20, 1925, the date on which the Levee Board passed a resolution authorizing the board to commence the acquisition of the property to construct the spillway as authorized by the legislature in Act 99 of 1924. Prior to this date, the legislature simply authorized the Levee Board in its discretion to create a spillway and to take the necessary action to effect this result. However, until the Levee Board acted pursuant to this legislative grant of authority, a dedication to public use was not effected. On May 20, 1925, the Levee Board took the necessary action to commence the acquisition of property for the express purpose of constructing a spillway and the dedication of the property to public use was effected.
Therefore, we find that the passage of the resolution by the Levee Board on May 20, 1925, effected a dedication of all property to be acquired by the Levee Board for the completion of the Bohemia Spillway. As a result, redemption would not have been precluded for any property adjudicated to the state for non-payment of taxes which was redeemed prior to May 20, 1925. Any acquisitions by the Levee Board of tax-adjudicated property, which had been redeemed prior to May 20, 1985, were acquired by the Levee Board by expropriation or under threat of expropriation in its effort to create the spillway. Therefore, the successors in interest to those properties, which were acquired by the Levee Board by expropriation or under threat of expropriation, are entitled to the benefits of Act 233 of 1984, as amended, and Act 819 of 1985.
Accordingly, we find that tracts 015, 028, 030, 102, 105, 108, 110, 115, 120, 157, and 158 were timely redeemed, were acquired by the Levee Board by expropriation or under threat of expropriation, and are subject to return to the original owners or their successors in interest.
With regard to those tax-adjudicated properties, which were redeemed subsequent to May 20, 1925, we must determine whether the return mandated by Act 233 of 1984 is in conflict with LSA-Const. Article 7, § 14(B)(4).
As a general rule, the Louisiana Constitution prohibits the loan, pledge, or donation of "funds, credit, property, or other things of value of the state or any political subdivision." LSA-Const. Article 7, § 14(A). However, section B of that article of the constitution specifically authorizes certain uses of state property as follows:
Nothing in this Section shall prevent ... the return of property, including mineral rights, to a former owner from whom the property had previously been expropriated, or purchased under threat of expropriation, when the legislature by law declares that the public and necessary purpose which originally supported the expropriation has ceased to exist and orders the return of the property to the former owner under such terms and conditions as specified by the legislature....
LSA-Const. Article 7, § 14(B)(4).
Generally, constitutional prohibition must be interpreted stricti juris, and anything not literally prohibited thereby would be permitted. Under the clear wording of these constitutional provisions, the state or its political subdivisions are prohibited *834 from donating state property. However, the constitution permits the state to donate its property if certain requirements have been met. First, the legislature by law declares that the public and necessary purpose which originally supported the expropriation has ceased to exist and orders the return of the property. Second, the property, including mineral rights, must have previously been expropriated or purchased under threat of expropriation.
In the instant case, the first requirement has clearly been met. Act 233 of 1984, as amended, expressly provides that the purpose for which the Bohemia Spillway was constructed no longer exists and orders a return of all such properties within the spillway to be returned to the previous owners or their successors in title. However, as fully discussed earlier, the properties which had been adjudicated to the state for non-payment of tax and which were not redeemed until after they had been dedicated to public use were not acquired by expropriation nor were they purchased under threat of expropriation. The properties were adjudicated to the state for non-payment of taxes. Thereafter, they were dedicated to public use, thus precluding subsequent redemption by the prior owners or their ancestors in title. As a result, any subsequent acquisition by the Levee Board via act of sales were in the nature of acts of convenience in order to alleviate expensive litigation over the ownership of this property at the time of the construction of the spillway in 1925. Accordingly, these properties were not acquired by the state by expropriation or under threat of expropriation and do not fall within the confines of the exception to the express constitutional prohibition.
We note, however, that by Acts 1992, No. 847, the Louisiana Legislature amended and reenacted Section 1 of Act 233 of 1984 as follows:
Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successor from whom the property was acquired by expropriation or by purchase under threat of expropriation, act of convenience, or otherwise, including but not limited to sale or transfer subsequent to an adjudication for the nonpayment of taxes. (emphasis added).
The Legislature declared that this amendment to Act 233 of 1984 was intended to be remedial and expressly made it retroactive.
A careful reading Act No. 847 reveals that, in enacting this amendment, the Legislature intended to expand the limitation of Article 7, § 14(A) to include these properties acquired through acts of convenience, including by sale or transfer subsequent to an adjudication to the state for non-payment of taxes. However, the constitution expressly prohibits and does not expressly authorize as an exception to the general prohibition of Article 7, § 14(A), the donation of state properties under these conditions. Despite the Legislature's intent to accomplish this result, an act of the legislature cannot, without specific approval by the electorate of this state amend the constitution. The 1992 act does not rise to the level of a constitutional amendment. See LSA-Const. Article 13, § 1, which expressly sets forth the manner in which a constitutional provision may be amended.
Therefore, we find that, given the present constitutional provision prohibiting such donations, tracts 022, 045, 099, 106, 129, 133, 140, 142, 143, 179, 196, 205, 210, and 214 fall outside the scope of Act 233 of 1984. Therefore, the Department is without *835 authority to certify claims as to these tracts.

SUBJECT-TO-LITIGATION TRACTS
The Levee Board contends that the nineteen tracts, which were stipulated to be in litigation on the effective date of Act 233 of 1984, are excluded from the provisions of the Act. In other words, the Levee Board contends that the Department cannot certify any tracts which were the subject of litigation on June 29, 1984. In so arguing, the Levee Board implies that the subject-to-litigation tracts, regardless of the outcome of the pending litigation, do not have to be returned to the property owners and that the Levee Board may legally retain the ownership of these tracts.
This is clearly not supported by the Act nor any reasonable interpretation of it. Prior to amendment and reenactment in 1992, Act 233 of 1984 provided, in pertinent part, as follows:
Pursuant to authority of Louisiana Constitution Article VII, Section 14(B), the Legislature of Louisiana hereby declares that the public and necessary purpose set forth in Act No. 99 of 1924, which may have originally supported the expropriation of property, or any right of ownership thereto, on the east bank of the Mississippi River in the parish of Plaquemines for the construction of a spillway, known as the Bohemia Spillway, has ceased to exist insofar as it ever may have affected the ownership of property, including mineral rights. The Legislature of Louisiana hereby orders the Board of Levee Commissioners of the Orleans Levee District, the board, to return the ownership of said property to the owners or their successors from whom the property was acquired by expropriation or by purchase under threat of expropriation. Neither the provisions of this Act nor any action pursuant to this Act shall affect the title to land which was the subject of litigation on the effective date of this Act. (Emphasis added).
Under the express provisions of the Act, until the pending litigation regarding subject-to-litigation tracts was resolved, the Department could not proceed with the certification as required by Act 233 of 1984. However, to give full force and effect to the wording of the legislative pronouncements and the spirit of the law, once this litigation has been resolved, the exception to the provisions of the Act is no longer applicable. Thereafter, the Department should be permitted to consider various claims of ownership of those tracts.
If the litigation is resolved in favor of the litigants and against the Levee Board, it will be unnecessary for the Department to entertain any claims of ownership because the pending litigation would have resolved this issue. If the litigation is resolved in favor of the Levee Board, then the Department would be required by the Act to entertain claims of ownership by other alleged owners of the property. In no event will the Levee Board be able to retain the ownership of such property solely because of the "pending litigation." The clear wording of Act 233 of 1984 clearly prohibits such a result.

CONCLUSION
For the above reasons, the judgment of the trial court is amended as follows:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of the plaintiff, The Board of Commissioners of the Orleans Levee District and against the defendants, the Secretary of The Department of Natural Resources of the State of Louisiana and The Department of Natural Resources of the State of Louisiana, declaring that all land in the Bohemia Spillway owned by the State of Louisiana on May 20, 1925, the date of the dedication of the spillway to public use, including all lands adjudicated to the state which had not been redeemed on or before that date, were dedicated to public use and purposes by said date, and were set aside and removed from commerce and title thereto passed unto the plaintiff as of that date; and further declaring that, because the landowner from whom the property was adjudicated for non-payment of taxes *836 was without any right to redeem it after this date, said lands, having been withdrawn from the redemptive statutes by dedication were not subject to redemption, were not acquired from the owners by plaintiff by expropriation or by purchase under threat of expropriation and, therefore, are not within the Secretary's jurisdiction and authority to certify claims to said tracts of land more fully identified on Exhibit P-46 by the following numbered designations:
022, 045, 099, 106, 129, 133, 140, 142, 143, 179, 196, 205, 210, and 214.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment declaring that the title to tracts of land numbered 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, and 214 were subject to litigation on the effective date of Act 233 of 1984 and are not subject to certification by the Secretary of the Department until the pending litigation regarding these tracts have been resolved. Thereafter, the Department may proceed with the certification as required by Act 233 of 1984.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Secretary of The Department of Natural Resources of the State of Louisiana, their agents, officers, employees and attorneys, be and they are hereby preliminarily and permanently restrained, enjoined, and prohibited from certifying any and all claims to the following tracts of land in the Bohemia Spillway numbered as follows, until such time as a constitutional amendment allowing the certification of such tracts, which were acquired by act of convenience, including by sale or transfer subsequent to an adjudication to the state for non-payment of taxes, has been passed:
022, 045, 099, 106, 129, 133, 140, 142, 143, 179, 196, 205, 210, and 214.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Secretary of The Department of Natural Resources of the State of Louisiana, their agents, officers, employees and attorneys, be and they are hereby preliminarily and permanently restrained, enjoined, and prohibited from certifying any and all claims to the following tracts of land in the Bohemia Spillway numbered as follows, until such time as the current litigation involving these tracts has been concluded in favor of The Board of Commissioners of the Orleans Levee District:
196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, and 214.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the certifications by the Secretary and The Department of Natural Resources of the State of Louisiana of Tracts 133, 205, and 210, pursuant to Act 233 of 1984 as amended by Act 819 of 1985, be and the same are hereby recalled, vacated, and set aside and declared to have no effect.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that there be judgment in favor of the intervenors' petitions for writ of mandamus issue herein ordering The Board of Commissioners of the Orleans Levee District to transfer the ownership of Tracts 15 and 115 to Gulf Coast Oyster Company, Ltd. and St. Paul's Episcopal Church and ordering The Board of Commissioners of the Orleans Levee District to transfer the ownership of Tracts 102, 105, and 108 to the heirs of Bernard Favret.
In all other respects, the judgment of the trial court is reversed. Costs of this appeal in the amount of $318.45 are assessed to the Levee Board.
AMENDED IN PART, AFFIRMED, AS AMENDED, AND REVERSED IN PART.
LOTTINGER, C.J., concurs and assigns written reasons.
LOTTINGER, Chief Judge, concurring.
I concur.
I believe that as of the effective date of Act 847 of the 1992 Regular Session, August 21, 1992, there is no longer any impediment to the full implementation of Act 233 *837 of 1984 to lands subject to litigation. When the legislature amended and reenacted Section 1 of Act 233 of the 1984 Regular Session by the enactment of Act 847, it left out the last sentence thereof which provided:
Neither the provisions of this Act nor any actions pursuant to this Act shall affect the title to land which was the subject of litigation on the effective date of this Act.
By not including this sentence in Act 847, the legislature obviously intended to delete this provision. Further, the legislature expressly declared Act 847 remedial and retroactive.
Thus I conclude any discussion in the majority's opinion relative to tracts subject to litigation is superfluous.
NOTES
[1] The tracts of land adjudicated to the state for failure to pay ad valorem taxes include the following tracts:

015, 022, 028, 030, 045, 099, 102, 105, 106, 108, 110, 115, 120, 129, 133, 140, 142, 143, 148, 149, 157, 158, 177, 179, 196, 205, 210, and 214.
[2] The tracts of land which were allegedly subject to litigation on the effective date of Act 233 of 1984, include the following tracts:

196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, and 214.
[3] Gulf Coast Oyster Co. and St. Paul's Episcopal Church alleged that the Department certified that the Levee Board was required to transfer ownership of tracts 15 and 115 to Gulf Coast Oyster Co. and St. Paul's Episcopal Church.
[4] The Favrets alleged that they applied to the Department for the return of tracts 102, 105, and 108 and that their application has been approved by the Special Master appointed by the Secretary of the Department.
[5] The trial court judgment declared that the Department did not have the jurisdiction or authority to certify the following tracts of land because, after having been adjudicated to the state for non-payment of taxes, the property had been dedicated to public use by the enactment of Act 99 of 1924, thus precluding the landowner from redeeming the properties:

015, 022, 028, 030, 045, 099, 102, 105, 106, 108, 115, 120, 129, 133, 140, 142, 143, 157, 158, 179, 196, 205, 208, 210, and 214.
[6] These tracts include:

196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, and 214.
[7] The tracts subject to the preliminary injunction included the following:

015, 022, 028, 030, 045, 099, 102, 105, 106, 108, 115, 120, 129, 133, 140, 142, 143, 157, 158, 179, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, and 214.
[8] The Department assigned the following errors:

1. The District Court erred in holding that all tracts of land owned by the State of Louisiana at the time of the enactment of Act 99 of 1924 were dedicated to a public purpose, and title thereto passed to the Levee Board by virtue of said Act.
2. The District Court erred in holding that the owners of the tracts adjudicated to the State of Louisiana for non-payment of taxes could not redeem those tracts and sell them to the Levee Board subsequent to the enactment of Act 99 of 1924.
3. The District Court erred in holding that the former tax adjudicated tracts were not acquired by the Levee Board by purchase under threat of expropriation, and therefore were not within the Secretary's jurisdiction and authority to certify claims of ownership to said tracts.
4. The District Court erred making its ruling on the tax adjudicated tracts effective as to those tracts which were the subject of litigation on the effective date of Act 233 of 1984.
[9] The Favret intervenors assigned the following error:

The trial court erred when it granted the Orleans Levee Board injunctive relief as requested and further erred in the dismissal of defendants and intervenors exceptions and petitions for alternative writs of mandamus.
[10] The Gulf Coast-St. Paul intervenors assigned the following errors:

1. The trial court erred in finding that, land in the Bohemia Spillway owned by the State on July 30, 1924, the effective date of Act No. 99 of 1924, including all lands adjudicated to the State for non-payment of taxes, was transferred to and title vested in the Orleans Levee Board in 1924.
2. Trial court erred in finding that any land owner from whom property was adjudicated for non-payment of taxes was without any right to subsequently redeem it.
3. The trial court erred in finding that lands, having been withdrawn from the redemptive statute by dedication, were not acquired from the owners by the Levee Board by expropriation or by purchase under threat of expropriation and were therefore not within the Department of Natural Resources Secretary's authority to certify claims of said tracts.
4. Trial court erred in not directing the Levee Board to transfer ownership of certified Tracts 15 and 115 to Gulf Coast Oyster Company and St. Paul's Episcopal Church.
[11] The record is devoid of any act showing that Tract 179 was redeemed by the owner subsequent to its adjudication to the state for non-payment of taxes.
[12] The record is devoid of any act of sale showing that the Levee Board purchased the Tract 214 subsequent to its adjudication to the state for nonpayment of taxes or its redemption by the owner.
[13] In 1932, LSA-Const. Article X, § 11 was amended to extend the redemptive period to three years.
[14] The word "deduction" rather than "dedication" is used in both the Southern Second and the Louisiana Reports versions of the quoted text.